**Betty MAYS, Plaintiff,**

v.

**WILLIAMSON AND SONS, JANITORIAL SERVICES, INC., Defendant.**

**No. PB C–81–407.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

Aug. 15, 1984.

July 2, 1984 for failure to comply with two local rules.

Richard L. Peel, Russellville, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

This action is brought pursuant to 42 U.S.C. §§ 2000e et seq. Plaintiff Betty Mays alleges that during her tenure with Defendant, Williamson and Sons Janitorial Services, Inc., she was subjected to sexual harassment by her supervisor, William Williamson and that she was terminated because she had made a charge of discrimination with the Equal Employment Opportunity Commission as a result of said sexual harassment.

The Defendant denies Plaintiff's allegations and contends that Plaintiff was terminated for legitimate and nondiscriminatory business reasons.

Plaintiff is a female citizen of the United States and resides in Pine Bluff, Jefferson County, Arkansas. Defendant is a corporation authorized to do business in the State of Arkansas and is presently engaged in the principal activity of providing janitorial services to the Pine Bluff Arsenal. The president of the Defendant Corporation is Jerry Williamson, and his brother William Williamson was the on site supervisor for the Defendant. Their sister, Trish Williamson, was the assistant supervisor of the Janitorial Services.

Plaintiff was hired by Defendant on November 1, 1979, when Defendant received the contract for providing Janitorial Services for the Pine Bluff Arsenal, which had been held by Plaintiff's previous employer. During the course of her employment with Defendant, Plaintiff was supervised by William Williamson. Throughout her tenure with Defendant, William Williamson followed a practice of making unwarranted sexual advances towards Plaintiff and refused to desist after Plaintiff made clear her disapproval of Mr. William Williamson's conduct.

Plaintiff testified that when President Jerry Williamson introduced his brother to the employees as their supervisor he stated

Ben Johnson, Jr., Johnson & Humphrey, Pine Bluff, Ark., for plaintiff.

that whatever William Williamson said was "how it would be." That we would be terminated immediately "if we didn't do what he said." She also stated that Williamson started making advances and remarks to her the first week on the job.

Plaintiff recounted the following instances of his sexual harassment.

When she and her co-worker, Della Foote, were working in the bathroom area he would approach them and tell Della Foote to leave. Then he would make advances to the Plaintiff. She also stated that once when she was in the stall he peered over the stall and looked at her while she was "in the act". He also reached for her and grabbed her several times and when she complained he told her "I'm the boss and I can do what I want".

Continuing she said she was dating a man named Mays and William Williamson did not like it. He told her that he was a better man than Mays and he would make things better for her on the job if she dated him.

On May 1, 1980, Plaintiff married Mays and when she returned to work William Williamson saw her ring. He grabbed her and jerked her and threatened her. He continued his sexual harassment even after Plaintiff's marriage to Mays.

Thereafter she received complaints about her work from William Williamson.

When Plaintiff rebuffed the advances of William Williamson, he assigned Plaintiff the cleaning of buildings 51–420 and 60–010. Building 51–420 contained some thirty-five offices. Plaintiff was given a reprimand for poor job performance in building 51–420 by William Williamson. Shirley Thompson, formerly Manager of Janitorial Services at Pine Bluff Arsenal, stated that building 51–420 was a large building and that when she was in charge she had four people cleaning it.

On September 24, 1980 Plaintiff filed a charge with the Equal Employment Opportunity Commission alleging that she was being subjected to sexual harassment by Defendant, and that the July 22, 1980 reprimand had been the result of her refusal to submit to sexual advances by William Williamson.

Della Foote and Plaintiff had worked together as a team prior to their being separated by supervisor William Williamson. Her testimony corroborated that of Plaintiff as to William Williamson's sexual harassment of Plaintiff.

■ The burden is initially on the plaintiff in a Title VII case to establish by a preponderance of evidence a prima facie case of discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). *See also, Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1253 (8th Cir.1981).

■ Once the plaintiff satisfies his burden of establishing a prima facie case, the burden then shifts to the defendant to provide a nondiscriminatory business reason for discharging the plaintiff. However, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Burdine* 450 U.S. at 253, 101 S.Ct. at 1093. Articulating some legitimate, nondiscriminatory business reason only requires an employer to present admissible evidence sufficient to raise a genuine factual issue as to whether plaintiff was discriminated against. *Id.*

■ Once the defendant satisfies the above burden, the burden then shifts to the plaintiff to show that the proffered reason is pretextual and not the true reason for the decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ With regard to the sexual harassment claim, the Eleventh Circuit has identified two basic varieties in *Henson v. City of Dundee*, 682 F.2d 897, 908 n. 18 (11th Cir.1982), and quoted in *Katz v. Dole*, 709 F.2d 251 (4th Cir.1983): "harassment that creates an offensive environment ('condition of work') and harassment in which a supervisor demands sexual consideration in exchange for job benefits ('quid pro quo')".

Plaintiff presented convincing evidence as to each type. The Henson case states the elements the plaintiff must allege and prove in order to establish her claim:

1. The employee belongs to a protected group.

2. The employee was subject to unwelcome sexual harassment.

3. The harassment complained of was based upon sex.

4. The harassment complained of affected a "term, condition or privilege" of employment.

5. Respondeat superior.

■ With respect to the retaliation claim, the order and allocation of proof in Title VII suits generally is also applied in cases alleging retaliation for participation in Title VII processes. *Womack v. Munson,* 619 F.2d 1292 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981). To establish a prima facie case of retaliation, the plaintiff must prove:

1. A statutorily protected participation

2. Adverse employment action

3. Proximate causation between the two

*Id.* at 1296.

■ The Court finds Plaintiff has met the criterion established by the foregoing cases and she has carried her burden and clearly established a prima facie case of harassment and retaliation.

Since Plaintiff has presented a prima facie case the burden is now upon the Defendant to articulate a legitimate, nondiscriminatory business reason for its action. The Court finds that the Defendant has articulated a legitimate, nondiscriminatory business reason for its action.

The Defendant presented the testimony of William Williamson denying that he had engaged in sexual harassment of Plaintiff or any other employee. He also detailed the deficiencies in Plaintiff's work performance. His testimony was supported by that of his sister, Trish Williamson. Other witnesses also testified that Plaintiff's job performance was poor.

From this evidence the Court finds that Defendant met its burden of proof under *Burdine, supra.*

After Defendant articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, Plaintiff then had the opportunity of proving by a preponderance of the evidence that the reasons were pretextual.

On this issue of the trial Plaintiff presented the following evidence:

Shirley Thompson, manager of the janitorial service formerly serving the Pine Bluff Arsenal, testified that Plaintiff's services were satisfactory to their inspector and that she had received no complaints concerning Plaintiff's work.

The next witness, Mary Alice Combs, testified that her first day on the job for the Defendant, William Williamson grabbed her breast.

Emma Wesley, another employee, testified that William Williamson took her away from the job site on her first day of work and propositioned her, telling her that if she would agree for them to "lay up at her house under the air conditioner", she could be paid while not working. Wesley filed a charge with the Equal Employment Opportunity Commission complaining of William Williamson's sexual advances.

J.N. Anderson, a seven year employee of the Arsenal, testified Plaintiff's work was "fair" and he never made any complaints.

Ardella Reeves who had worked for the Pine Bluff Arsenal since 1963 testified Plaintiff cleaned her office as well as anyone else and performed her work "in a satisfactory manner". To her knowledge no complaints were made in connection with Plaintiff's work.

Donna Pee, Equal Employment Opportunity Commission officer, stated that Plaintiff had complained to her about sexual harassment by William Williamson more than once.

Bennie Clark, employee of the Pine Bluff Arsenal for nine years, testified that Plaintiff "did a good job in the area around him."

On recall Plaintiff in her own behalf reiterated the sexual harassment charges against William Williamson. She also denied excessive tardiness, absences and poor job performance. She stated she had no knowledge of most of the memoranda in her personnel file. Plaintiff disputed vigorously the integrity of the several "memorandum to myself" and other documents written by William Williamson introduced into evidence at trial. Plaintiff was unaware of the existence of most of these documents and it is a highly suspect practice to place allegations of misconduct or poor work performance in an employee's personnel file without notice to the employee. Specifically, Plaintiff maintains that she never received a reprimand for excessive absenteeism during her tenure with Defendant. This Court cannot find credible Defendant's allegation that so many unexcused absences by Plaintiff were tolerated.

After Plaintiff went to the Equal Employment Opportunity Commission for assistance with the sexual harassment charge William Williamson and Patricia Williamson placed Plaintiff under a surveillance. Plaintiff was notified on June 12, 1981 of her "proposed termination". Plaintiff was terminated on June 19, 1981, and filed a charge of retaliation with the Equal Employment Opportunity Commission with respect to her termination on September 8, 1981.

Plaintiff was issued notices of right to sue with respect to her charges by the Equal Employment Opportunity Commission on October 21, 1981 and August 20, 1982. Plaintiff commenced this action within the time and in the manner prescribed by 42 U.S.C. §§ 2000e et seq.

Jerry Williamson, President of Defendant, followed a course of action, in response to Plaintiff's charge with Equal Employment Opportunity Commission, which the Court finds to be inadequate. *Barrett v. Omaha Nat. Bank,* 726 F.2d 424 (8th Cir.1984); *Heelan v. Johns-Manville Corp.,* 451 F.Supp. 1382 (D.C.Colo.1978). *See also, Lucas v. Brown & Root, Inc.,* 736 F.2d 1202, 1205, footnote 3 (8th Cir.1984). He only asked his brother to confirm or deny the charges made against him by Plaintiff, and other employees, and did not conduct any investigation of William Williamson's conduct.

In its trial brief the Defendant stated that the "facts as presented by Plaintiff and Defendant will be diametrically opposed" and "the sole question for the court will be a resolution of the facts". The court finds this to be an accurate statement and resolves the credibility issues in favor of the Plaintiff.

The Court finds that the Plaintiff has proved by a preponderance of the evidence that the business reasons offered by the Defendant were not its true reasons but were a pretext when in reality Plaintiff was fired in retaliation against her for filing the Equal Employment Opportunity Commission charge.

The Court is convinced Plaintiff would not have been terminated if she had been receptive to the sexual advances of William Williamson and had not filed the charge.

The Court finds Plaintiff is entitled to recover back pay and reasonable attorney's fees. However, the Court has serious doubts about ordering reinstatement since the Defendant is a wholly owned and managed family corporation and the animosity between the parties was obvious at trial.

The Court will give Plaintiff ten (10) days to file a brief on this issue; Plaintiff should also file a verified petition for attorney's fees, detailing the hours, etc. Plaintiff should also submit a proposed precedent for judgment.

Defendant will be given ten (10) days thereafter to file his brief and objections to the above.