Betty MAYS, Appellee,

v.

**WILLIAMSON & SONS, JANITORIAL SERVICES, INC., Appellant.**

No. 84–2418.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1985.

Decided Oct. 18, 1985.

Rehearing Denied Nov. 15, 1985.

John Wesley Hall, Jr., Little Rock, Ark., for appellant.

Ben Johnson, Jr., Monticello, Ark., for appellee.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Circuit Judge.

Williamson and Sons, Janitorial Services, Inc., (hereinafter "WSJS") appeals from the district court's [1] judgment for appellee Betty Mays on her claims of sexual harassment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* We affirm.

WSJS, a minority-owned business located in Russellville, Arkansas, hired Mays as a janitor on November 1, 1979, when it was awarded the contract to provide janitorial services for the federal government's Pine Bluff Arsenal.[2] In early 1980, William Williamson was made the on-site supervisor for WSJS's Pine Bluff Arsenal operations. Mays testified that Williamson began making sexual advances to her almost immediately after he became supervisor; he repeatedly instructed Mays's co-worker to leave so that he would be alone with Mays, and then touched or grabbed her while making suggestive remarks.

1. The Honorable Elsijane T. Roy, United States District Judge for the Eastern and Western Districts of Arkansas.

2. Mays had worked as a janitor for the company that previously provided janitorial services to the Arsenal, and had established a satisfactory work record there.

In September, 1980, Mays filed a charge of sexual discrimination with the Equal Employment Opportunity Commission (EEOC). She testified that Williamson's sexual harassment continued after she filed the charge, that he also sexually harassed co-workers, and that the conditions of her employment generally worsened. Mays was discharged on June 18, 1981, allegedly because of poor job performance, whereupon she filed a retaliation charge with the EEOC. She then brought this Title VII action.

The district court entered judgment for Mays, finding, *inter alia*, with respect to the sexual harassment claim, that Williamson followed a practice of making unwarranted sexual advances toward Mays, including reaching for and grabbing her, peering over a bathroom stall door at her, and threatening her after her marriage. The district court concluded that Mays had established a prima facie case of sex discrimination. *Mays v. Williamson and Sons, Janitorial Services, Inc.,* 591 F.Supp. 1518, 1520–21 (E.D.Ark.1984).

With respect to the retaliation claim, the district court found that after Mays filed a complaint with the EEOC, Williamson placed her under surveillance in an attempt to document excuses to terminate her, made "highly suspect" memos to himself regarding Mays's poor job performance and misconduct, and finally notified her of her proposed termination on June 12, 1981. The court found that Mays would not have been terminated if she had been receptive to Williamson's sexual advances and had not filed the charge with the EEOC. *Mays,* 591 F.Supp. at 1522.

WSJS contends that the district court erred in the manner in which it weighed the evidence. The district court employed the three-step analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). WSJS, citing *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983), argues that the district court, by trifurcating the evidence and failing to accord the company's evidence the proper weight, thereby disregarded the Supreme Court's admonition that "[t]he prima facie case method established in McDonnell Douglas was 'never intended to be rigid, mechanical, or ritualistic.'" Specifically, WSJS contends that the district court did not consider defense evidence of Mays's absenteeism, tardiness, and poor job performance in evaluating whether Mays proved pretext, but instead considered that evidence only in relation to the question whether the appellant had articulated a legitimate business justification for the discharge.

■ We find this argument unpersuasive. The district court clearly weighed all of the evidence in determining pretext, and the evidence supports its determination. Mays testified that after she filed the September 24, 1980, charge, her supervisors became very strict with her and found unacceptable job performance that had been acceptable before the filing of the charge. Furthermore, the district court specifically rejected much of appellant's evidence of poor job performance, noting that

> [appellee] disputed vigorously the integrity of the several "memorandum to myself" and other documents written by William Williamson introduced into evidence at trial. * * * [I]t is a highly suspect practice to place allegations of misconduct or poor work performance in an employee's personnel file without notice to the employee. * * * This Court cannot find credible [appellant's] allegation that so many unexcused absences by [appellee] were tolerated.

*Mays,* 591 F.Supp. at 1522.
The court resolved the credibility determinations in favor of Mays. Its determinations were not clearly erroneous, *Anderson v. City of Bessemer City,* — U.S. —, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

WSJS also argues that the district court ignored the supervisors' testimony of Mays's poor job performance and relied solely on the rebuttal testimony of office

workers in finding for Mays. We have carefully reviewed the testimony, and again conclude that the district court's findings were not clearly erroneous. The testimony of Arsenal personnel was inconclusive; those personnel testified to intermittently poor cleaning, but often could not identify Mays as the person responsible. The district court rejected the testimony of WSJS supervisors on credibility grounds.

Finally, WSJS cites *Kellin v. ACF Industries*, 517 F.Supp. 226 (E.D.Mo.1981), *aff'd*, 671 F.2d 279 (8th Cir.1982), to support its argument that the length of time between the filing of the EEOC charge and Mays's termination so weakened the inference of retaliation that the district court erred in concluding that WSJS's articulated reasons for the discharge were pretextual. The argument might have merit in the absence of discriminatory acts between the filing of the charge and the termination. As noted earlier, however, the district court found evidence of adverse actions taken against Mays after she filed the charge. *Mays*, 591 F.Supp. at 1522. Furthermore, the court found that the president of WSJS, Jerry Williamson, responded inadequately to Mays's EEOC charge. *Id.* Finally, as noted earlier, the district court specifically rejected many of WSJS's assertions of absenteeism. *Id.*

As the appellant acknowledges, and as the district court recognized, the central issue was whether Mays met her burden of persuasion that she was the victim of intentional discrimination. *See Burdine*, 450 U.S. at 254–56, 101 S.Ct. at 1094–95; *Robinson v. Monsanto Co.*, 758 F.2d 331, 336 (8th Cir.1985). We have carefully reviewed the record and conclude that the district court properly weighed the evidence, and that its finding that she met her burden is not clearly erroneous.

**Attorney's Fees**

WSJS also appeals the award of attorney's fees in the amount of $10,120; it contests both the hourly rate of $80 and the number of hours, 126.5.

The award of attorney's fees rests within the sound discretion of the trial court. *Robinson*, 758 F.2d at 336. We find no abuse of discretion. The district court clearly gave careful attention to the matter, reducing both the hourly rate requested by Mays's attorney and the number of hours for which compensation was awarded.

Judgment affirmed.