COLLEGE-TOWN, DIVISION OF INTERCO, INCORPORATED *vs.*
MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION
& another.[1,2]

Norfolk. December 3, 1986. — June 3, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Anti-Discrimination Law,* Sex. *Massachusetts Commission Against Discrimination. Employment,* Discrimination, Sexual harassment. *Damages,* Under anti-discrimination law, Emotional distress.

Employment discrimination prohibited by G. L. c. 151B, § 4 (1), includes conduct which creates a sexually harassing work environment. [161-162]

Evidence of a supervisor's pattern, during a period of several months, of engaging in unwelcome sexual conduct toward an employee under his supervision, which included offensive comments, touching, and sexual solicitation, warranted a hearing commissioner of the Massachusetts Commission Against Discrimination in concluding that a barrier, based solely on gender, had been created against the employee's full and untrammelled participation in the workplace and that this constituted discrimination within the meaning of G. L. c. 151B, § 4. [162]

An employer was vicariously liable under G. L. c. 151B, § 4, for the conduct of one of its supervisors, who, by a pattern of objectionable conduct during a period of several months, had created a sexually harassing work environment for an employee under his supervision. [163-167] LYNCH, J., with whom NOLAN and O'CONNOR, JJ., joined, dissenting.

A hearing commissioner of the Massachusetts Commission Against Discrimination was warranted in concluding that an employer had discriminated against one of its employees by failing to take adequate remedial steps after she complained of sexual harassment by her supervisor. [167-168] LYNCH, J., with whom NOLAN and O'CONNOR, JJ., joined, dissenting.

A hearing commissioner of the Massachusetts Commission Against Discrimination was warranted in finding that an employer's attempted transfer of one of its employees, and its subsequent discharge of the employee

---

[1] Loretta D. Rizzi.

[2] We acknowledge the brief filed by the Women's Bar Association of Massachusetts and the Civil Liberties Union of Massachusetts, as amici curiae.

when she declined the transfer, were in retaliation for her claims of sexual harassment. [168]

A hearing commissioner of the Massachusetts Commission Against Discrimination did not err in awarding back pay to an employee who was found to have been discharged in retaliation for her claim of sexual harassment by a supervisor, since the employee had been under no duty to mitigate the employer's damages by submitting to a mandatory transfer, itself retaliatory treatment proscribed by G. L. c. 151B, § 4 (4). [168-169]

A hearing commissioner of the Massachusetts Commission Against Discrimination properly awarded damages for the emotional distress suffered by an employee who was found to have been subjected to sexual harassment by her supervisor and to have been discharged in retaliation for her having filed a complaint with the commission. [169]

The Massachusetts Commission Against Discrimination, in an award of damages under G. L. c. 151B, § 5, in an employment discrimination proceeding did not err in including interest from the time the proceeding was commenced. [169-170]

In an employment discrimination proceeding before the Massachusetts Commission Against Discrimination, a hearing commissioner's findings of fact were based on substantial evidence and contained no error of law. [170]


CIVIL ACTION commenced in the Superior Court Department on June 27, 1984.

The case was heard by *George N. Hurd, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Jerry Lybarger* of Missouri (*David C. Phalen* with him) for the plaintiff.

*Barbara B. Dickey* for Massachusetts Commission Against Discrimination.

*Marjorie Heins, S. Beville May, & Alison J. Bell,* for Women's Bar Association of Massachusetts & another, amici curiae, submitted a brief.

HENNESSEY, C.J. College-Town, Division of Interco, Incorporated (College-Town), appeals from the decision of a judge of the Superior Court affirming a decision by the Massachusetts Commission Against Discrimination that College-Town had discriminated against an employee, Loretta Rizzi, on the basis of

sex, in violation of G. L. c. 151B, § 4 (1) and (4). The commission, affirming the decision of the hearing commissioner, had decided that College-Town was liable because its supervisor had created a sexually harassing work environment, because it had failed to remedy the situation, and because it had retaliated against Rizzi in seeking to transfer her and in discharging her when she declined the transfer. College-Town argues that the commission's decision was not supported by substantial evidence and is incorrect as a matter of law. We affirm.

We summarize the facts as they were found by the hearing commissioner. Loretta Rizzi began working at College-Town in March, 1979, as a "production clerical." Several weeks after Rizzi was hired, her supervisor, Chester Broad, began making sexually suggestive comments to her, such as "You have a sexy voice on the phone" and "You have a sexy walk. I like the way you walk." On one occasion, Broad approached her as she sat at her desk, placed his hand on her back and said, "Boy, you have a firm back for a broad your age." Later that month, Broad telephoned her from another company facility, and asked, "Hey, how about our getting together? I'll practice my judo and you practice your karate at your apartment." Another time, Broad came over to Rizzi as she sat at her desk, covered the slit in her dress, and said, "Fix your skirt." In June, 1979, Rizzi asked Broad to evaluate her performance in a meeting earlier that day. Broad responded, "You handled it very well. Do you know the best way you handled it? I liked the way your tits stood out in the red shirt."

In July or early August, 1979, the character of Broad's remarks changed. On one occasion, Broad looked around to see if anyone was listening, and then turned to Rizzi and asked, "Are you a good f---?" Rizzi replied that it was none of Broad's business, and then went to the women's room and cried because she felt "cheap and degraded." When Rizzi told a coworker of Broad's remarks, the coworker urged her to speak with Mike Levy, the director of manufacturing. Rizzi went to Levy's office on Friday, August 17, 1979, and told him that Broad had been sexually harassing her since April. Levy told her he

did not want to hear details because he was not "qualified to go into these things." Levy referred Rizzi to Claire Bergman in the personnel department. Rizzi was not able to meet with Bergman until the following Tuesday, at which time Rizzi told Bergman about Broad's harassment.

In the meantime, Broad propositioned Rizzi again, putting his head close to hers and saying, "Are you a good f---?" Rizzi began to cry. Broad handed her some tissues, and said, "Hey, hey, hey, cut it out. You are going to get me in trouble. I say that to my wife's girlfriends all the time. They are in the same boat that you are in." Rizzi reported this incident to Bergman, and expressed concern that she might lose a promotion she had been seeking.

Bergman directed Levy to speak with Broad about the accusations, and then spoke with Broad herself. Broad denied the allegations and stated that, in fact, Rizzi had made sexually suggestive comments to him. Bergman decided to call a meeting of Broad's staff to determine the truth of the allegations. Broad and all the other women in the department, except Rizzi, attended. Rizzi was neither asked to the meeting nor notified of its occurrence and purpose. At the meeting, Bergman and Broad explained the allegations Rizzi had made against Broad. Broad remained in the room throughout the meeting. The coworkers were not asked any questions about the alleged incidents, but did "express dismay at the allegations and were generally supportive of Broad." Three of Rizzi's coworkers later testified that they had never observed any conduct by Broad which might constitute sexual harassment.

College-Town made no further investigation, although vice president Carl Packer testified that he believed College-Town was never satisfied it had determined the truth of Rizzi's allegations. None of the staff was questioned at the meeting or individually. College-Town never provided Rizzi with the opportunity to present her case before her coworkers or to confront Broad. In fact, College-Town took no further action on the matter, did not further interview Rizzi, and did not issue a warning to or take disciplinary action against Broad.

During the same period in 1979, Rizzi began seeking a promotion to a position in another department as assistant to Ed Gordon, director in charge of duplicates. Although Rizzi sought this position while Broad's harassment occurred, the harassment does not appear to have been her motive in seeking the position. Rizzi first complained to Levy and Bergman of Broad's harassment, in part, because of her concern that it might jeopardize her chances of receiving the promotion. Shortly before the meeting of the office staff concerning Rizzi's allegations of sexual harassment, Gordon informed Levy that Rizzi was not qualified for the position. Following the meeting of the office staff concerning the sexual harassment charges, Levy informed Rizzi that she was not qualified for the promotion. College-Town subsequently hired a person with more knowledge and experience. On October 9, 1979, Rizzi filed a complaint with the commission alleging that she had been sexually harassed and had been denied the promotion in retaliation for complaining about the harassment.

After Rizzi filed her complaint, Packer, Levy, and Bergman became concerned that tension in the allocation office was affecting productivity. They decided to transfer Rizzi to a similar position in a nearby facility; Rizzi could easily be transferred, they testified at trial, while Broad was considered essential. Bergman offered Rizzi the transfer on October 1, 1979. Rizzi declined, telling Bergman that she would consider only a position equivalent to the promotion that she had been seeking. Bergman told Rizzi to think about it over the weekend. On the following Monday, Rizzi again declined the transfer. At no time did Bergman tell Rizzi that the transfer was mandatory.

On October 25, 1979, Packer called Rizzi into his office, and said, "Loretta, it has come to my attention that you are suing College-Town. It's been done before. Here is your vacation, your severance pay or whatever, and good luck. May I have your badge?" Packer testified that Rizzi was fired for refusing the mandatory transfer.

On November 5, 1979, Rizzi amended her complaint to allege that her discharge was in retaliation for filing the original complaint.

After a hearing, the hearing commissioner found that Broad had sexually harassed Rizzi, that College-Town's investigation of Rizzi's allegations was incomplete, inadequate, insensitive to Rizzi and deferential to Broad, and that both the transfer and discharge were retaliatory. The hearing commissioner found that Rizzi was not offered the promotion because she was not qualified, and not in retaliation for complaining about Broad's sexual harassment. The hearing commissioner awarded Rizzi damages amounting to $10,000 for emotional distress resulting from the harassment and discharge, back pay of $7,733.81, plus interest at the statutory rate of twelve percent per year.

College-Town appealed to the full commission, which affirmed the decision of the hearing commissioner, concluding that his decision was supported by substantial evidence and was correct in the application of the law. College-Town sought judicial review of the commission's decision in the Superior Court, arguing that the decision was not supported by substantial evidence and contained errors of law. The judge affirmed the commission's decision. College-Town appealed the judge's decision and this court, on its own motion, took the case for review.

1. This court has not previously been presented with the questions whether sexual harassment constitutes discrimination in violation of G. L. c. 151B, § 4 (1), and on what basis an employer may be found liable. General Laws c. 151B, § 4, as amended through St. 1965, c. 397, § 4, provides: "It shall be an unlawful practice: 1. For an employer, by himself or his agent, because of the race, color, religious creed, national origin, sex, . . . or ancestry of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification." General Laws c. 151B, § 9, as amended through St. 1974, c. 478, provides in part: "The provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof . . . ."

We conclude, and College-Town cites no authority to the contrary, that sexual harassment may constitute discrimination in violation of G. L. c. 151B, § 4 (1).[3] Chapter 151B, § 4 (1), prohibits employment discrimination on the basis of gender, and seeks the removal of artificial, arbitrary, and unnecessary barriers to full participation in the workplace. A work environment pervaded by harassment or abuse, with the resulting intimidation, humiliation, and stigmatization, poses a formidable barrier to the full participation of an individual in the workplace.

The discrimination prohibited by G. L. c. 151B, § 4 (1), encompasses a work environment pervaded by abuse and harassment. Section 4 (1) applies not only to hiring, firing, and compensation, but also to the "terms, conditions or privileges of employment." Clearly, within the broad sweep of that language falls conduct which creates a sexually harassing work environment.

2. College-Town argues that the hearing commissioner erred in concluding that Rizzi had been subjected to a sexually harassing work environment. We disagree. The hearing commissioner found that, over a period of several months, Broad had engaged in a pattern of unwelcome sexual conduct toward Rizzi, including offensive comments, touching, and sexual propositions. Broad's behavior was sufficiently pervasive to alter the conditions of Rizzi's employment, and thus created a sexually harassing working environment. As a result, Broad's conduct created a barrier, based solely on gender, to Rizzi's full and untrammelled participation in the workplace. General Laws c. 151B, § 4, was intended to remove these discriminatory barriers. Therefore, the hearing commissioner was warranted in concluding that Broad's conduct constituted discrimination based on sex within the meaning of G. L. c. 151B, § 4.

---

[3] Although we need not, and do not, rely on Federal precedents to support our conclusion, we do observe that the Federal cases interpreting Title VII are in accord that sexual harassment, including the creation of a sexually harassing work environment, may constitute discrimination on the basis of sex under Title VII. *Meritor Sav. Bank, FSB,* v. *Vinson,* 477 U.S. 57, 63-69 (1986).

3. College-Town argues that it should not be liable for Broad's conduct. College-Town contends that an employer should be liable for sexual harassment only if (1) a supervisor sexually harasses an employee in exercising the power to hire, fire, or determine compensation and promotion, or (2) the employer is aware of sexual harassment in the workplace, whether caused by supervisors, coworkers, or customers, and fails to take adequate steps to remedy the situation. While we agree that College-Town has described two instances in which an employer would be liable, College-Town has not defined the full scope of an employer's liability for sexual harassment in the workplace.

College-Town argues that we should distinguish "quid pro quo" harassment, in which a supervisor conditions tangible job benefits on submission to sexual demands or harassment, from the creation of a sexually harassing work environment, without the conditioning of tangible job benefits. College-Town relies on Federal cases interpreting Title VII of the Civil Rights Act of 1964[4] for this distinction, as does the dissent in this case. In interpreting our statute, we may look to the interpretations of Title VII of the analogous Federal statute; we are not, however, bound by interpretations of the Federal statute in construing our own State statute. *Massachusetts Elec. Co.* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 160, 167 (1978). "Title VII and the decisions construing it are not determinative of the questions presented in this case; rather the issue presented is purely one of the interpretation of a Massachusetts statute. . . . While interpretations of a Federal statute which is similar to the State statute under consideration are often helpful in setting forth all the various policy considerations, such interpretations are not binding on a State court

---

[4] Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-(2)(a)(1) (1982), makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Congress has defined "employer" to include any "agent" of an employer. 42 U.S.C. § 2000e (b) (1982).

construing its own State statute." (Citations omitted.) *Id.* Even if we assume that Federal precedents support College-Town's position, we do not rely on those precedents.[5]

---

[5] We think, also, that the Federal cases interpreting Title VII are in some disarray with regard to the precise limits to employer liability for harassment by supervisors of their subordinates. In *Henson* v. *Dundee*, 682 F.2d 897, 909-910 (11th Cir. 1982), the United States Court of Appeals for the Eleventh Circuit distinguished sexual discrimination by supervisors which causes tangible job detriment from a sexually harassing work environment. The court concluded that, under Title VII, an employer is "strictly liable" for sexual discrimination by supervisors that causes tangible job detriment. *Id.* at 910. "When [the employer gave] its [supervisory personnel] authority to fire employees, it also accepted responsibility to remedy any harm caused by [the supervisors'] unlawful exercise of that authority. The modern corporate entity consists of the individuals who manage it, and little, if any, progress in eradicating discrimination in employment will be made if the corporate employer is able to hide behind the shield of individual employee action." *Id.* at 909, quoting *Tidwell* v. *American Oil Co.*, 332 F. Supp. 424, 436 (D. Utah 1971).

Nevertheless, the Court of Appeals reasoned that a sexually harassing work environment caused by a supervisor does not present the same basis for employer liability, reasoning that "[t]he environment in which an employee works can be rendered offensive in an equal degree by the acts of supervisors, . . . coworkers, . . . or even strangers to the workplace" (citations omitted). *Id.* at 910. "The capacity of any person to create a hostile or offensive environment is not necessarily enhanced or diminished by any degree of authority which the employer confers upon that individual." *Id.*

Several Federal courts have concluded that notice to the "employer" is not required where a supervisor sexually harasses subordinates. See *Vinson* v. *Taylor*, 753 F.2d 141 (D.C. Cir. 1985), aff'd and remanded sub nom. *Meritor Sav. Bank, FSB,* v. *Vinson,* 477 U.S. 57 (1986); *Horn* v. *Duke Homes, Div. of Windsor Mobile Homes, Inc.,* 755 F.2d 599, 604 (7th Cir. 1985); *Mitchell* v. *OsAir, Inc.,* 629 F. Supp. 636, 641-644 (N.D. Ohio 1986); *Jeppsen* v. *Wunnicke,* 611 F. Supp. 78 (D. Alaska 1985). See also *Craig* v. *Y & Y Snacks, Inc.,* 721 F.2d 77, 81 (3d Cir. 1983) ("It is also the prevailing view in other circuits that employer liability follows when the supervising employee has broad authority over employment decisions. . . . [Requiring notice would] permit an employer to insulate itself from Title VII liability 'by sealing off its ultimate executive officials from those [the supervisors] with the fullest form of day to day operational authority to govern at the plant level.'"); *Miller* v. *Bank of Am.,* 600 F.2d 211, 213 (9th Cir. 1979); *Vermett* v. *Hough,* 627 F. Supp. 587, 606 n.9 (W.D. Mich. 1986) (noting with approval a commentator's proposal that an employer should be "strictly liable" for sexual harassment by supervisors, but constructive knowledge required for harassment by coworkers).

Construing Title VII in *Meritor Sav. Bank, FSB,* v. *Vinson,* the United States Supreme Court "decline[d] the parties' invitation to issue a definitive

College-Town argues that it should not be "strictly liable" for the conduct of a supervisor creating a sexually harassing work environment. We disagree with College-Town's reasoning and characterization of its liability. We are not presented with the question whether G. L. c. 151B, § 4, imposes an affirmative obligation on an employer to ensure that its workplace is not pervaded by harassment based on race, color, religious creed, national origin, sex, or ancestry, regardless of the source of the harassment. College-Town is, in this case, vicariously liable for the acts of its agents — its supervisory personnel. General Laws c. 151B, § 4, prohibits discrimination by "an employer, by himself or his agent." Furthermore, G. L. c. 151B, § 9, provides that "[t]he provisions of this chapter shall be construed liberally for the accomplishment of the purposes thereof . . . ."

It is clear that the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority. We disagree with College-Town's reasoning that the authority conferred on a supervisor is not related to the creation of a sexually harassing environment. That reasoning simply is not a realistic assessment of the dynamics of sexual harassment in the workplace. The Legislature sought to remove

---

rule on employer liability." 477 U.S. at 72. The Court did state that "Congress wanted courts to look to agency principles for guidance in this area." *Id.* The Court concluded that employers are not "always automatically liable for sexual harassment by their supervisors," but also that "absence of notice to an employer does not necessarily insulate that employer from liability." *Id.* Four members of the Court concurred, finding the question of the employer's liability properly before the Court, and concluded that "sexual harassment by a supervisor of an employee under his supervision, leading to a discriminatory work environment, should be imputed to the employer for Title VII purposes regardless of whether the employee gave 'notice' of the offense." *Id.* at 78 (Marshall, J., concurring in the judgment).

It is not clear what application the Federal courts will give to "agency principles" in interpreting Title VII after *Meritor Sav. Bank, FSB,* v. *Vinson, supra.* Whatever application the *Henson* distinction receives in cases interpreting Title VII, we conclude that, in enacting G. L. c. 151B, § 4, the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority, without an additional notice requirement.

discriminatory barriers to full participation in the workforce. Supervisors who create a sexually harassing work environment present a serious barrier to that goal. Harassment by a supervisor stigmatizes an employee, and appears to reflect an attitude of the employer that the employee is not considered equal to other employees. In addition, harassment by a supervisor carries an implied threat that the supervisor will punish resistance through exercising supervisory powers, which may range from discharge to assignment of work, particularly exacting scrutiny, or refusal to protect the employee from coworker harassment. Quid pro quo harassment may be easier to identify as an abuse of the authority vested in a supervisor because of the effect on tangible job conditions, but it does not define the limit of a supervisor's authority. Although coworkers or even outsiders may also be capable of creating a sexually harassing work environment, it is the authority conferred upon a supervisor by the employer that makes the supervisor particularly able to force subordinates to submit to sexual harassment. See generally Note, Sexual Harassment Claims of Abusive Work Environment Under Title VII, 97 Harv. L. Rev. 1449, 1461-1462 (1984); Note, Sexual Harassment and Title VII: The Foundation for the Elimination of Sexual Cooperation as an Employment Condition, 76 Mich. L. Rev. 1007, 1026-1027 (1978).

The commission has consistently found an employer liable for sexual harassment of subordinates committed by its supervisors. See *Brodeur* v. *Harney's Superstore*, 5 M.D.L.R. 1335 (1983); *Emmons* v. *Codex*, 4 M.D.L.R. 1523 (1982). We note that "an administrative interpretation of a statute is accorded deference particularly 'where, as here, an agency must interpret a legislative policy which is only broadly set out in the governing statute.'" *School Comm. of Wellesley* v. *Labor Relations Comm'n*, 376 Mass. 112, 116 (1978), quoting *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 850 (1977).

We also note an anomaly in College-Town's position. College-Town concedes that an employer is liable for sexual harassment in the workplace if the employer is notified of the condition and fails to take adequate steps to remedy the situa-

tion. If the harassment in this case had been committed by someone other than Rizzi's supervisor, Broad, and Rizzi had informed Broad of the situation, College-Town would thereby have been notified, and would have had an affirmative obligation to remedy the situation. At the same time, College-Town argues that it should not be vicariously liable for sexual harassment committed by Broad himself. We do not think that the Legislature intended employers to be liable for their supervisors' discriminatory acts in exercising their supervisory powers only after the employee complains to the employer. "We are not insensitive to the fact that 'employees are understandably reticent to complain or try to prove affronts of such a personal and debasing nature [as sexual harassment].' " *Zirelli v. Director of the Div. of Employment Sec.*, 394 Mass. 229, 232 (1985), quoting *Colduvell* v. *Unemployment Compensation Bd. of Review*, 48 Pa. Commw. 185, 187 (1979). The shortcomings of a system requiring notice to the employer are particularly pronounced where it is the employee's supervisor who commits sexual harassment. We see no reason why an employer should be liable for a supervisor who fails to remedy or report coworker harassment, but not for the supervisor's own harassment of subordinates.

In this case, we conclude that the commission did not err in finding College-Town liable for Broad's sexual harassment. Broad was Rizzi's supervisor, and College-Town had conferred on him substantial authority over his subordinates. By the terms of G. L. c. 151B, § 4, therefore, College-Town is liable for discrimination committed by Broad.

4. The hearing commissioner also found that College-Town discriminated against Rizzi in violation of G. L. c. 151B, § 4, by failing to take adequate steps to remedy the situation once Rizzi complained of Broad's harassment. College-Town does not contest that an employer who is notified of sexual harassment in the workplace and fails to take adequate remedial action violates G. L. c. 151B, § 4.

In this case, the hearing commissioner found that College-Town did not conduct a fair or thorough investigation of Rizzi's allegation of sexual harassment. Rizzi was never informed

about the staff meeting, while Broad was present throughout. The staff were never questioned individually. Rizzi was never provided an opportunity to confront Broad, nor was she interviewed after Broad and the staff had been approached. No disciplinary action was taken, nor was a warning issued to Broad. The hearing commissioner concluded that the investigation was "deferential and inadequate." The commissioner's conclusion was supported by substantial evidence, and there was no error of law. See G. L. c. 151B, § 6; G. L. c. 30A, § 14 (7) (as appearing in St. 1973, c. 1114, § 3); *Springfield Bd. of Police Comm'rs* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 782, 782-783 (1978); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 132-133 (1976); *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 364-365 (1974).

5. College-Town argues that the hearing commissioner erred in finding that its attempted transfer and subsequent discharge of Rizzi were in retaliation for her claims of sexual harassment. We disagree. The Legislature recognized that a person who complained of discrimination risked retaliation, and separately prohibited retaliation. G. L. c. 151B, § 4 (4). The hearing commissioner found that College-Town decided to transfer Rizzi to relieve "tension" in the department where Rizzi and Broad worked, and did not consider moving Broad, who was deemed essential, while the plaintiff was regarded as easily replaceable. The commissioner also found that College-Town never informed Rizzi that the transfer was mandatory, and that its vice president, Packer, said when he fired her, "[I]t has come to my attention that you are suing College-Town. It's been done before. Here is your vacation, your severance pay or whatever, and good luck. May I have your badge?" Substantial evidence supported the hearing commissioner's conclusion, and there was no error of law.

We reject College-Town's argument that, in refusing the transfer, Rizzi failed to mitigate damages, and the hearing commissioner therefore erred in awarding her back pay. First, the hearing commissioner found that Rizzi was never told that

the transfer was mandatory. Therefore, she could not be required to accept the transfer to mitigate a discharge she did not know was forthcoming. Second, both the transfer and the discharge were in retaliation for Rizzi's allegations of sexual harassment. Rizzi was not required to submit to retaliatory treatment, itself proscribed by G. L. c. 151B, § 4 (4), in order to reduce College-Town's liability for prior discrimination.

6. College-Town contests the hearing commissioner's award of damages for emotional distress. There was no error in the hearing commissioner's decision to admit in evidence a letter from a psychologist who had treated Rizzi, and a statement of charges for the treatment. Although the hearing commissioner erroneously stated that the documents were admissible under G. L. c. 233, § 79G, the commission is not bound by the strict rules of evidence. G. L. c. 151B, § 5. G. L. c. 30A, § 11 (2). Furthermore, the commissioner was warranted in finding damages for emotional distress based on other evidence, including Rizzi's testimony about the harassment and retaliatory discharge. See *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 303, 315-317 (1976); *Buckley Nursing Home, Inc.* v. *Massachusetts Comm'n Against Discrimination,* 20 Mass. App. Ct. 172, 182-183 (1985). Finally, College-Town argues that Rizzi's damages for emotional distress were compensable exclusively under the Workmen's Compensation Act, G. L. c. 152, § 26. College-Town is precluded from arguing this issue on appeal because it failed to raise it before the commission, and has shown no extraordinary circumstances excusing its failure or neglect. G. L. c. 151B, § 6. Moreover, even if College-Town had properly raised the issue, we do not agree that damages in this case resulting from the violation of G. L. c. 151B, § 4, are compensable exclusively under the Workmen's Compensation Act. See *Foley* v. *Polaroid Corp.,* 381 Mass. 545, 553 (1980). See also G. L. c. 151B, § 9.

7. College-Town argues that the commissioner did not have authority to award interest, and even if he did, he misapplied the rates and incorrectly calculated the interest. We conclude that the commissioner did not err in the award of interest.

College-Town, Division of Interco, Inc. *v.* Massachusetts Commission Against Discrimination.

The commission is given broad authority to remedy discrimination, and that authority extends to awarding interest to make victims whole for their damages. G. L. c. 151B, § 5. See *Bournewood Hosp., Inc., supra* at 315-317; *Buckley Nursing Home, Inc., supra* at 181-182. See also *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 579-580 (1983). We note that the commission has looked to G. L. c. 231, § 6B, for guidance in determining the rate and in calculating interest. We conclude that the commission did not err in awarding interest from the commencement of the proceeding. Cf. *Gill* v. *North Shore Radiological Assocs.*, 385 Mass. 180, 183 (1982); *Charles D. Bonanno Linen Serv., Inc.* v. *McCarthy*, 550 F. Supp. 231, 247 (D. Mass. 1982).

8. Finally, College-Town devotes a considerable portion of its brief to challenging the commissioner's findings of fact. Our review is limited to determining whether the commissioner's findings and conclusions were supported by substantial evidence, and whether there was an error of law. G. L. c. 151B, § 6. G. L. c. 30A, § 14 (7). *Springfield Bd. of Police Comm'rs* v. *Massachusetts Comm'n Against Discrimination*, 375 Mass. 782, 782-783 (1978). *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 132-133 (1976). *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 364-365 (1974). The commissioner's findings were based in part on his assessment of the credibility of witnesses, drawing reasonable inferences, and reconciling inconsistent and conflicting testimony. See *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 224 (1978). Based upon our review of the entire record, we conclude that the commissioner's findings and decision, as approved by the commission, were supported by substantial evidence and there was no error of law.

*Judgment affirmed.*

LYNCH, J. (dissenting in part, with whom Nolan and O'Connor, JJ., join). I cannot join in parts three and four of the

.

400 Mass. 156                                        171

College-Town, Division of Interco, Inc. *v.* Massachusetts Commission Against Discrimination.

opinion. In an opinion notably devoid of precedential support the court concludes that College-Town is vicariously liable for the conduct of Broad. In so doing it relegates the strong body of contrary Federal precedent to a footnote, and ignores traditional common law principles for imposing liability upon an employer for the acts of its employee.

In concluding that vicarious liability is appropriate in this case, the court follows neither the Court of Appeals in *Henson* v. *Dundee*, 682 F.2d 897 (11th Cir. 1982), nor the United States Supreme Court in *Meritor Sav. Bank, FSB,* v. *Vinson,* 477 U.S. 57 (1986).

In *Henson,* the Court of Appeals ruled that, "[w]here, as here, the plaintiff seeks to hold the employer responsible for the hostile environment created by the plaintiff's supervisor or coworker, she must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action. See *Bundy* v. *Jackson,* 641 F.2d [934] 943 & n.8; *Vinson* v. *Taylor,* 23 Fair Empl. Prac. Cas. (BNA) at 41-42" (footnote omitted). *Henson, supra* at 905. This is the rule applied by the overwhelming number of Federal courts that have recognized the issue,[1] including the District Court decision that was the progenitor of *Meritor, Vinson* v. *Taylor,* 23 Fair Empl. Prac. Cas. 37 (BNA 1980). See, e.g., *Moylan* v. *Maries County,* 792 F.2d 746, 750 (8th Cir. 1986); *Craig* v. *Y & Y Snacks, Inc.,* 721 F.2d 77 (3d Cir. 1983); *Phillips* v. *Smalley Maintenance Servs., Inc.,* 711 F.2d 1524 (11th Cir. 1983); *Katz* v. *Dole,* 709 F.2d 251, 255 (4th Cir. 1983); *Tompkins* v. *Public Serv. Elec. & Gas Co.,* 568 F.2d 1044, 1048 (3d Cir. 1977); *Egger* v. *Local 276, Plumbers Union,* 644 F. Supp. 795, 801-802 (D. Mass. 1986) (citing *Meritor Sav. Bank, FSB,* v. *Vinson, supra*); *Benton* v. *Kroger Co.,* 640 F. Supp. 1317, 1322 (S.D. Tex. 1986); *Bowen* v. *Valley Camp of Utah, Inc.,* 639 F. Supp. 1199, 1203-1204 (D. Utah 1986) (same); *Volk* v. *Coler,* 638 F. Supp. 1555 (C.D. Ill.

---

[1] The Federal decisions are not in disarray as the court contends, but in general agreement except for the Court of Appeals decision in *Vinson* v. *Taylor,* which is discussed in detail in the text.

1986) (same); *Priest* v. *Rotary*, 634 F. Supp. 571, 582 (N.D. Cal. 1986); *Mays* v. *Williamson & Sons, Janitorial Servs., Inc.*, 591 F. Supp. 1518 (E.D. Ark. 1984), aff'd. 775 F.2d 258 (8th Cir. 1985); *Zabkowicz* v. *West Bend Co.*, 589 F. Supp. 780, 784-785 (E.D. Wisc. 1984); *Cummings* v. *Walsh Constr. Co.*, 561 F. Supp. 872, 878 (S.D. Ga. 1983); *Coley* v. *Consolidated Rail Corp.*, 561 F. Supp. 645, 650 (E.D. Mich. 1982); *Ferguson* v. *E.I. du Pont de Nemours & Co.*, 560 F. Supp. 1172, 1198-1199 (D. Del. 1983). Contra *Mitchell* v. *OsAir, Inc.*, 629 F. Supp. 636, 641 (N.D. Ohio 1986) (relying on United States Court of Appeals decision in *Vinson* v. *Taylor*, 753 F.2d 141 (D.C. Cir. 1985); *Jeppsen* v. *Wunnicke*, 611 F. Supp. 78, 80-83 (D. Alaska 1985) (same). See also *Crimm* v. *Missouri Pac. Ry.*, 750 F.2d 703, 710 (8th Cir. 1984) (acknowledging respondeat superior requirement articulated in *Henson*); *Vermett* v. *Hough*, 627 F. Supp. 587, 606-607 (W.D. Mich. 1986) (same). In a singular departure from this general rule the Court of Appeals for the District of Columbia Circuit, in an opinion also significantly lacking in precedential support, held that any discriminatory activity by a supervisor is attributable to the employer. *Vinson* v. *Taylor*, 753 F.2d 141 (D.C. Cir. 1985). In reviewing that decision, however, the United States Supreme Court held that the Court of Appeals was wrong in entirely disregarding agency principles and in imposing absolute liability on employers for the acts of their supervisors regardless of the circumstances of a particular case. The Supreme Court cited with approval the Restatement (Second) of Agency §§ 219-237 (1958), and noted that the Equal Employment Opportunity Commission believes "that when a sexual harassment claim rests exclusively on a 'hostile environment' theory, . . . the usual basis for a finding of agency will often disappear." *Meritor, supra* at 77-78. The grievance in *Meritor* involved a sexually harassing work environment claim (hostile environment), which was the same as the basis for the commission's finding of sexual harassment here. The underlying facts of the dispute in *Meritor* are significant. The plaintiff's employment and rapid advancement were based on merit and did not depend on the sexual activity upon which she based her

complaint. During the period of her employment and rapid promotion, she had a voluntary, intimate sexual relationship with a supervisor which, among other things, involved forty or fifty instances of sexual relations over two years. This sexual activity stopped about one year prior to the incident which brought about her complaint. She was discharged for taking six weeks of unauthorized sick leave for a vaguely described condition. She was still on sick leave when the discharge occurred. She did not report her claim of sexual harassment to anyone prior to her discharge, nor did any other female employee file a complaint or grievance about the supervisor.

On these facts, the United States Court of Appeals for the District of Columbia Circuit would have imposed liability on her employer under the same rule indorsed by the court here. The Supreme Court rejected that rule, however, and held that its application by the Court of Appeals was error. Although unwilling to lay down a definitive rule on employer liability because of the abstract quality of that case, the Supreme Court made clear that agency principles should provide guidance in determining employers' liability, but indicated that exceptions would be appropriate, such as where the conduct was so pervasive and so long continuing that the employer must have known about it or perhaps where no reasonable avenue of complaint was available.

The court's opinion therefore ignores traditional common law concepts and cavalierly disposes of the significant contrary precedent without serious analysis. This, we are told, is because the result is mandated by the clear intent of the Legislature. If so, it is an intent nowhere expressed in the statute itself nor in any legislative history of which the reader is made aware. On so sterile a showing I am unable to discern a legislative intent that common law principles and Federal precedent be avoided in order to find an employer liable for unauthorized conduct not specifically forbidden by the statute. In so doing, the court applies a concept of discrimination recognized in the Federal decisions that the court conveniently ignores which, while condemning the conduct, would mandate a contrary re-

sult. On the contrary, I find no suggestion that the Legislature intended to impose liability on an employer because a supervisor created a "sexually charged atmosphere" that was unrelated to gain or loss of employment or economic benefits, where the conduct was contrary to the employer's policy, of no benefit to the employer, and with no showing that the employer knew or should have known about the conduct. In such cases, I would find liability only where accepted agency principles would attribute the supervisor's conduct to the employer.

Neither would I impose liability in this case because of the nature of the employer's investigation of the employee's complaints. The findings establish that the employer acted promptly on the plaintiff's complaints; action was commenced on the next business day. The investigation included those employees who would have been expected to have knowledge of the incidents. Even though no corroboration of the employee's complaints was divulged, the employer took remedial action by allowing the plaintiff to change her work area, and thereafter she told her employer everything was fine. Although the commission is critical of the employer's investigation, there was no corroboration of the employee's complaints on the record before it or other evidence not discovered by the employer. The employer was, therefore, faced with the problem of resolving a credibility contest between a recently hired employee and a comparatively senior supervisor. Nevertheless, the employer took action which could not fairly be termed an unreasonable response to the allegations. An employer should not have liability imposed on it for failing to conduct an investigation that would have been more in accordance with a lawyer's understanding of due process but which would have disclosed no additional facts and which could not have been expected to produce any different remedial action.

Although I find support in the record for the commission's belated findings of retaliatory discharge, I would reverse because the damages imposed would not be appropriate on that aspect of the case alone. I would not reach the question of the employee's entitlement to damages for emotional distress.