**Charles T. MESSINA, Plaintiff,**

v.

**ARASERVE, INC., d/b/a ARA Campus Dining Services at Massachusetts Institute of Technology, Defendant.**

**Civ. A. No. 94–10632–MEL.**

United States District Court,
D. Massachusetts.

Oct. 12, 1995.

William J. McLeod, Boston, MA, for Plaintiff.

Treazure R. Johnson, Eckert, Seamans, Cherin & Mellot, Boston, MA and Andrew M. Cohen, Goodwin, Proctor & Hoar, Boston, MA, for Defendant.

LASKER, District Judge.

Charles Messina brings suit, based on diversity jurisdiction, under Chapter 151B of Massachusetts law claiming sexual harassment in the workplace and intentional infliction of emotional distress. Araserve, Inc., now known as Aramark, moves for summary judgment on both claims.

### I.

The following facts are reported by Messina and must be accepted as true for purposes of this summary judgment motion:

Messina is a homosexual male. He began working for Aramark on November 8, 1993. Aramark provides dining services on the Massachusetts Institute of Technology ("MIT") campus. D. David Dannells—the principal alleged offender—began working for Aramark sometime in 1990. Before September 1993, the paths of Messina and Dannells had crossed on only a few occasions. During those occasions, Dannells acted inappropriately towards Messina, including grabbing his head and pulling it towards his crotch.

In September 1993, Messina was transferred to the Student Center kitchen where his position was that of "general cook" and Dannells' was that of "Executive Chef." As Executive Chef, Dannells was responsible for supervising the production of food at the Student Center, including food prepared by

Messina. John Fell, a general cook, worked in the kitchen with Dannells and Messina.

During September and October of 1993, Dannells and Fell harassed Messina through name-calling and sexually suggestive gestures: Dannells referred to Messina as "Chucky Sucky;" when Messina asked Dannells where the "thing" was (meaning a thermometer), Dannells responded "I've got your thing right here," grabbing his crotch; over an intercom at the Student Center, Dannells paged Messina by saying "Chuck, this is the Chef, I want you"; Dannells told Messina to "blow him"; and Dannells, on more than one occasion asked Messina "Where have you been? Dropping a load in someone's mouth?"

·On October 26, 1993, Messina reported the sexual harassment to Beth Emery, the Associate Director of Dining Services at Aramark. Emery assured Messina that his complaint would be treated seriously and set up a second meeting with him and Patricia Bedrosian, a regional Human Resources Manager for Aramark. Emery and Bedrosian investigated Messina's complaint during the following week, speaking with witnesses named by Messina about the behavior of Dannells and Fell. They concluded that Dannells and Fell had engaged in what they described as "unprofessional conduct." On October 29, 1993, Aramark management met with Fell, reprimanded him for his behavior, and placed a written warning letter in his employee file. On November 2, 1993, Aramark management met with Dannells and informed him that he was being suspended without pay for one week and that he was required to attend a seminar on sexual harassment.

As a result of his complaint, Emery transferred Messina to Walker Dining Hall at MIT. Messina reported to Walker Hall on November 5, 1993. On November 9, 1993, Messina informed Aramark that he would no longer work for them.

## II.

Aramark argues that it is entitled to summary judgment: first, because the alleged behavior of Dannells and Fell does not establish a "hostile environment" claim as a matter of law; second, because there is no basis for employer liability based on Dannells' supervisory status, since Dannells was not Messina's direct supervisor; and third, Aramark is not responsible for Dannells' and Fell's actions as a matter of law because once it was notified of the harassment, it took "appropriate steps to stop it." Finally, Aramark contends that Messina's intentional infliction of emotional distress claim is barred by the Massachusetts Workers' Compensation Act.

Messina counters that there are genuine issues of material fact as to whether Dannells' and Fell's behavior constituted sexual harassment and as to whether Dannells was Messina's supervisor. Moreover, Messina argues that under Chapter 151B, Aramark's response to the alleged harassment of its supervisor—no matter how appropriate—does not provide a complete bar to Aramark's liability.

## III.

### Count I

■ Aramark argues that Messina cannot establish a claim for hostile environment sexual harassment as a matter of law. In *College–Town v. Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 508 N.E.2d 587 (1987), the Supreme Judicial Court found that Chapter 151B discrimination "encompasses a work environment pervaded by abuse and harassment" and applies to the "terms, conditions and privileges of employment." *Id.* at 162, 508 N.E.2d 587. To constitute actionable harassment, the claimed conduct must be both objectively and subjectively offensive. *Ramsdell v. Western Mass. Bus Lines, Inc.,* 415 Mass. 673, 678, 615 N.E.2d 192 (1993). That is, the court must consider whether, in the totality of the circumstances, the alleged conduct is sufficiently severe and pervasive to "interfere with a hypothetical reasonable person's work performance." *Lewis v. Gillette,* 1993 WL 291771, 1993 U.S.Dist. Lexis 10239 (D.Mass. 1993).

■ Aramark asserts that Messina has failed to demonstrate that the alleged conduct would be. actionable harassment to a

reasonable person. It argues that in the context of a stressful kitchen environment, where swearing and joking between employees is routine, Dannells' and Fell's behavior was not so severe or pervasive as to affect a reasonable person's work performance. While this may prove to be true, whether in the environs of a stressful kitchen, Dannells and Fell's comments and gestures were pervasive enough to affect the work performance of a reasonable homosexual man is a question for the factfinder.

Aramark argues further that Messina's response to Dannells' and Fell's conduct—joking with them—unequivocally demonstrates that he was not subjectively offended by their behavior. However, Messina's testimony that he joked with Dannells on two occasions in an attempt "to make light of" his behavior raises a factual question as to whether he was joking, as Aramark argues, or rather, using humor as a coping mechanism in a hostile environment. *See, e.g., Cardin v. Via Tropical Fruits, Inc.*, 1993 U.S.Dist. Lexis 16302 (S.D.Fla.1993) (finding that a victim of pervasive sexual innuendo and vulgar joking may participate in order to "fit in" and to defuse offensive milieu).

Aramark next contends that regardless of whether Dannells' and Fell's behavior constitutes sexual harassment, there is no basis for employer liability because it responded appropriately and promptly to Messina's complaint. Under Title VII, an employer's remediation, where done promptly and appropriately, can be a complete bar to liability for harassment committed by a supervisor or co-worker. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986): *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988). However, the Massachusetts sexual harassment law—the rule of decision in this diversity case—differs from Title VII on this important matter.

Under Chapter 151B, an employer is unconditionally liable for sexual harassment by its supervisors. *College–Town v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 165, 508 N.E.2d 587 (1987). Thus, under Massachusetts law, an employer's remediation does not bar liability for harassment committed by a supervisor. Accordingly, if Dannells was Messina's supervisor, Aramark would be liable for his behavior, regardless of any remediation on its part.

Aramark cites *Saad v. Stanley Street Treatment & Resources, Inc.*, Civ.Action 92–11434, 1994 WL 846911 (D.Mass.1994) as rejecting the view that *College–Town* imposes per se liability upon an employer for the acts of its supervisors. However, *Saad* does not hold that under Massachusetts law an employer is not absolutely liable for the acts of its supervisor, but only that an employer may not be liable for "the acts of supervisory employees who are not acting in their supervisory role when dealing with another employee." *Saad* at 17. *See also Johnson v. Plastic Packaging, Inc.*, 892 F.Supp. 25, 28 (D.Mass.1995) (characterizing *Saad* as a co-worker sexual harassment case, since supervisor allegedly harassed a "non-subordinate co-worker").

Aramark argues that Dannells was not Messina's "supervisor" because he had no actual or apparent authority over him. However, as Executive Chef, Dannells was responsible for all production of food at the Student Center, including food produced by Messina. Moreover, Dannells' job description included the supervision of general cooks, like Messina. Thus, even though Messina admits that Dannells was not his direct supervisor, whether Dannells exercised supervisory authority over Messina is a question for the trier of fact. *See, e.g., Przybcien v. AID Maintenance Co.*, 13 MDLR 1266 (March 1991) (finding accused was plaintiff's "supervisor" even though not formally designated as such in company hierarchy).

In sum, in each of the questions of fact described above, Aramark's motion for summary judgment dismissing Count I as to Dannells' behavior is denied.

However, Aramark is correct that the effect of adequate remediation on employer liability for sexual harassment committed by a co-worker under Chapter 151B is the same as under Title VII: it is a bar to liability. *See College–Town*, 400 Mass. at

166, 508 N.E.2d 587; *Klessens v. United States Postal Service,* 1994 WL 718952 *4–5, 1994 U.S.App. Lexis 36482, *12 (1st Cir. 1994). Under both statutes, an employer is liable for the sexual harassment perpetrated by an employee if it knew or should have known of the harassment, unless the employer can show it took appropriate steps to halt the harassment. *Id.* Since Massachusetts courts apply federal case law construing federal anti-discrimination statutes in interpreting Chapter 151B, it is persuasive on this point. *See Wheatley v. American Tel. & Tel. Co.,* 418 Mass. 394, 397, 636 N.E.2d 265 (1994).

■ In the case at hand, Messina admits that Fell was, like himself, a general cook at the Student Center. Thus, Fell was Messina's co-worker. Accordingly, once Aramark was notified of Fell's behavior, it "had an affirmative obligation to remedy the situation." *College–Town* at 167, 508 N.E.2d 587.

Messina alleges that on three occasions Fell joined Dannells in making offensive comments or gestures about his homosexuality: the first involved Dannells and Fell using a kitchen object to simulate oral sex; the second involved commenting to Messina that "Chef [Dannells] wants you" after Messina was paged by Dannells in a sexually provocative manner; the third involved a conversation between Dannells and Fell in which they made derogatory comments about homosexuals. Additionally, Messina alleges that he heard Fell and another co-worker talking about "fags" in a derisive fashion.

Aramark disputes the validity of these allegations. However, even assuming that Messina's allegations against Fell are true, Aramark has met its obligation to remedy the harassment and is therefore not liable under Chapter 151B.[1] Messina complained to Aramark through Emery, its Associate Director of Dining Services, on October 26, 1993. Messina admits that Emery and Be-

drosian, the regional Human Resources Manager, took his complaint seriously. On October 29, three days after Messina made his initial complaint, Fell was reprimanded for what was described by Aramark as "unprofessional conduct" and informed that a warning letter was being placed in his file. Considering the fact that the offensive action that Messina alleges against Fell was limited to what Messina described above, Aramark's response was prompt and appropriate. *See, e.g., Klessens,* 1994 WL 718952 *5, 1994 U.S.App. Lexis 36482 at *13 (finding employer took appropriate corrective action when it transferred offending co-worker shortly after investigation). Accordingly, Aramark's summary judgment motion as to Count I is granted with regard to its liability for Fell's behavior.

## IV.

### Count II

Aramark contends that Messina's claim for intentional infliction of emotional distress is barred by the Massachusetts Workers' Compensation Act, M.G.L. c. 152 § 24. Messina concedes that Aramark is correct as to this claim. Accordingly, summary judgment is granted as to Count II of Messina's complaint for intentional infliction of emotional distress.

Aramark's motion for summary judgment is granted as to Count I with regard to Aramark's liability for Fell's behavior; denied as to Count I with regard to Aramark's liability for Dannells' behavior; and granted with regard to Count II.

It is so ordered.

---

1. Aramark has moved to strike portions of Messina's opposition memorandum, including some of Messina's allegations about Fell. Aramark admits that Fell joined Dannells in his "unprofessional conduct," but objects to the content of Messina's specific allegations. However, regardless of whether Messina's allegations are stricken (or true), Aramark's motion for summary judgment as to its liability for Fell's behavior is granted because it took appropriate steps to remedy his harassment. Accordingly, since none of this decision is based on any of the statements objected to in Aramark's motion to strike, that motion is denied as moot. If the material objected to by Aramark is presented at trial, the Court will rule on its admissibility at that time.