**Sheryl MOREHOUSE, and William Morehouse, Plaintiffs,**

v.

**BERKSHIRE GAS CO., Joseph Aberdale, David Grande, and Michael Wendling, Defendants,**

v.

**Michael WENDLING, As Third–Party Plaintiff,**

v.

**THE TRAVELERS INSURANCE COMPANY, Third–Party Defendant.**

**Civil Action No. 95–30235–MAP.**

United States District Court, D. Massachusetts.

Dec. 31, 1997.

---

gavin & Waystack, Boston, MA, for Jack Murdock.

Richard J. O'Brien, Pittsfield, MA, for Michael Wendling.

William P. Hadley, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Travelers Ins. Co.

## MEMORANDUM REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND THIRD–PARTY DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
*(Docket Nos. 48, 51, 54, 56, 73)*

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiffs Sheryl and William Morehouse allege that their employer, Berkshire Gas Company ("Berkshire"), and Berkshire employees Joseph Aberdale, David Grande, and Michael Wendling, sexually harassed Sheryl Morehouse in violation of Mass. Gen. Laws ch. 151B, § 4 (Count One), and that in so doing, the individual defendants intentionally or negligently inflicted emotional distress on both plaintiffs (Count Two). In addition, the plaintiffs claim that Berkshire negligently failed to prevent, limit, or mitigate the actions of the individual defendants (Count Three). Each of the defendants has moved for summary judgment. Defendant Wendling also filed a third-party complaint against Travelers Insurance Company demanding that Travelers provide Wendling with a defense against the plaintiffs' claims and indemnify him with respect to any judgment entered against him on such claims. Travelers has moved, without opposition, for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c).

For the reasons set forth below, the defendants' motions will be allowed in part and denied in part. Specifically, the court will allow summary judgment as to: 1) Count One with respect to Wendling; 2) Count Two (intentional infliction of emotional distress) with respect to Wendling; 3) Count Two (negligent infliction of emotional distress) with respect to all defendants; and 4) Count Three, which is against Berkshire only. The court will grant summary judgment as to all claims of William Morehouse. The defen-

Warren H. Pyle, Pyle, Rome & Lichten, Boston, MA, for Sheryl Morehouse, William Morehouse.

Ronald E. Oliveira, Martin & Oliveira, Pittsfield, MA, for Berkshire Gas Co.

Thomas Curley, Campoli & Campoli, Pittsfield, MA, for Joseph Aberdale.

Lee D. Flournoy, Cain, Hibbard, Myers & Cook, Pittsfield, MA, Daniel H. Rider, Jr., Longmeadow, MA, for David Grande.

David R. Cianflone, Cianflone & Cianflone, P.C., Pittsfield, MA, John P. Fitzgerald, Co-

dants' motions will be denied as to: 1) Count One with respect to Ms. Morehouse's claims against Aberdale, Grande, and Berkshire, and 2) Count Two (intentional infliction of emotional distress) with respect to Ms. Morehouse's claims against Aberdale and Grande. Finally, third-party defendant Travelers' motion for judgment on the pleadings will be allowed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court is obliged to view the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 534 (1st Cir.1996). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Once the moving party has properly supported the motion for summary judgment, the burden shifts to the nonmovant, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor. *Sears Roebuck & Co. v. Goldstone & Sudalter*, 128 F.3d 10, 18 (1st Cir.1997).

## III. FACTUAL BACKGROUND

Plaintiffs Sheryl and William Morehouse are employees of Berkshire, a public utility corporation with offices in Pittsfield, Massachusetts. In 1994, obscenely defaced pictures of Ms. Morehouse were posted at a golf tournament organized for Berkshire employees and their guests. At the time the alleged sexual harassment took place, defendants Joseph Aberdale, David Grande, and Michael Wendling were co-employees of the Morehouses. Aberdale was the manager of engineering and distribution for Berkshire; Grande was a senior engineer who also supervised work crews; and Wendling was a distribution supervisor and plaintiff William Morehouse's direct supervisor.

In the months prior to the 1994 tournament, union/management relations at Berkshire were, according to William Morehouse, "touchy." In June of that year, Mr. Morehouse had exercised seniority rights under his union contract with Berkshire to claim a vacancy as a Pittsfield "street leader," a position that authorized him to assign work to crews. Mr. Morehouse had held the same position in the North Adams area, which was nearer to his Stamford, Vermont residence, but the Pittsfield position allowed him to fulfill his responsibilities more effectively as local union vice president. Mr. Morehouse's decision to bid for the Pittsfield job thwarted the bid of the next-highest ranking employee, Rick Scapin. Defendants Wendling, Grande, Aberdale, and another employee, Gerald Doyle (Wendling's supervisor and Scapin's brother-in-law), supported Scapin for the position, and met with a Berkshire vice president to express their unhappiness with Mr. Morehouse's actions.

In a separate episode in August 1994—one month prior to the golf tournament—Aberdale and Sheryl Morehouse had an altercation at work. At that time, Ms. Morehouse was the shop steward for employees in the Customer Information Center ("CIC"). When management complained at a meeting with union representatives that employees were taking excessive work breaks, the union representatives responded that management personnel were guilty of similar conduct, and cited Aberdale's breaks in the CIC. Shortly thereafter, when Ms. Morehouse went to deliver a message in the engineering section, Aberdale blocked her way and asked, "What the fuck are you doing here?" and told her that she "better watch [her] fucking back" and "stay out of his fucking area." Thereafter, when Ms. Morehouse walked through the area, Aberdale would stand looking at his watch. She reported this to her superiors.

On September 24, 1994, the "Berkshire Gas Company Fall Classic Golf Tournament" was held at the Bass Ridge Country Club in Hinsdale. Defendants Wendling and Grande organized the event on company time, using company facilities (*e.g.*, telephones, photocopying, and bulletin boards).[1] As organizers, Wendling and Grande collected entrance fees, solicited donations from merchants, obtained trophies, prizes, alcohol, and other supplies, and arranged activities such as the "long drive" contest and the catered meal following the tournament. For this particular tournament, a total of thirty-five persons participated—all men—including fifteen guests (non-employees), ten salaried non-union employees, and ten union hourly employees of Berkshire. The plaintiffs did not attend the tournament.

The tournament followed a "scramble," or "best ball" format. Foursomes were assigned to start at various holes; each group eventually toured the nine-hole circuit twice. Defendant Aberdale joined Wendling, Grande, and Berkshire employee Ray Milukas in a foursome assigned to begin at the first tee.

Just prior to the start of the tournament, Aberdale produced from his golf bag several photocopies of a framed portrait of Sheryl Morehouse that Mr. Morehouse kept on his desk at work. Aberdale maintains that the pictures somehow "appeared" in his golf bag and that he did not intentionally bring them to the course. Aberdale exhibited the photocopies to the members of his foursome (defendants Grande and Wendling, and Milukas) and told Wendling he was "going to have some fun."

While Grande was practicing putting on the nearby ninth green, Aberdale handed Grande one of the photocopies and instructed Grande to attach the picture to the flag at the ninth hole. Grande complied. After the foursome finished putting on the first hole, Aberdale gave Grande another photocopy of the portrait, which Grande hung on the flag at the first green. Grande admits to drinking heavily that day, and acknowledges that he was "totally intoxicated" by the time the foursome reached the fifth tee. At this point, Aberdale gave Grande a third photocopy and Grande affixed it to a trash barrel near the tee. Grande and Wendling maintain that nothing was written or drawn on the picture at that time. However, when they reached the tee during the second round, a penis and testicles had been drawn on the picture next to Ms. Morehouse's mouth. Grande and Wendling state that they did not remove the picture because it was wet; Wendling assumed it was wet with urine. All three individual defendants concede that they laughed and joked when they saw the picture in this condition.

The long drive contest was set up at the fifth hole. On the long drive marker, another photocopy of Ms. Morehouse had been posted, inscribed with "DAVE FUCKED HER" and "DRIVE IT HOME." All three individual defendants deny knowledge of the origin of the handwriting, but the plaintiffs' handwriting expert has submitted that the words "DRIVE IT HOME" were written by Aberdale. Yet another picture with the words "Miss Pownal View Barn" was posted on the clipboard used to record long drive shots; an additional photocopy was recovered with the words "MISS STANFORD 1994" (presumably a reference to the Vermont town where the Morehouses live). Plaintiffs' handwriting expert has concluded that the writing on the latter was probably that of Aberdale. One participant, later interviewed by Berkshire, reported seeing another copy bearing the words "Queen of the Union." Finally, "Sheryl Sucks Cock" was written in one of the sandtraps.

Aberdale and Grande have affirmed that they and Wendling laughed and joked about the photocopies of Ms. Morehouse throughout the afternoon round. None of the tournament participants attempted to remove any of the pictures. After the event, the three individual defendants agreed to lie about their involvement in the incident.

1. For several years before 1994, Berkshire employees organized and participated in annual golf tournaments. In prior years, Berkshire had contributed financially to the annual tournaments and had publicized them in its newsletter for employees and stockholders. Company presidents and other Berkshire executives regularly participated in these outings.

On September 29, the local union president heard about the pictures and informed Mr. Morehouse, who went to the country club after work and recovered photocopies from the trash, including the copy with "DAVE FUCKED HER" and "DRIVE IT HOME," the copy marked "MISS STANFORD 1994," a copy with a hole driven through the head of the xeroxed portrait, and the copy with a penis and testicles drawn next to Ms. Morehouse's mouth.

Responding to reports of the incident at the tournament, Berkshire officials interviewed employee participants. Aberdale, Grande, and Wendling initially denied any involvement. After four weeks, Berkshire suspended its investigation, having concluded that:

> it appeared the foursome teeing off on the 1st hole ... was the most likely to have at least put up the pictures .... Although there is circumstantial evidence to suggest that either the entire foursome or some part thereof that teed off on the first hole is involved, it is not strong enough, by itself, to assign guilt.

Nov. 1, 1994 Memorandum by Berkshire Vice Presidents Michael Marrone and Bob Allessio, Pl.'s Ex. 16.

When Ms. Morehouse saw the pictures she felt that what had happened was "an invasion of [her] personal and private things." She stated that she was dismayed by the obscenities and the fact that both co-workers and supervisors had played at the tournament and presumably witnessed the spectacle.

Word of the incident spread at Berkshire, and although Ms. Morehouse went to work the following day, she left by 11:00 a.m. because she was "just too emotional." She did not return to work until nearly one month later and attributes many absences from work thereafter to the golf tournament incident. Her therapist reported that Ms. Morehouse experienced headaches and anxiety, feelings of detachment and estrangement from co-workers, and revulsion at having seen some of the photocopies and knowing that co-workers had seen them and yet failed to step forward and remove them. Furthermore, Ms. Morehouse now claims that she suffers from a depressive disorder that seriously impairs her ability to work and negatively affects her marital relations.

In March 1995 the plaintiffs filed charges with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC").

As a result, Berkshire reopened its investigation. According to a Berkshire executive, Aberdale, Grande, and Wendling continued their stonewalling, which included lying to the attorney that they initially consulted to represent them in this matter. On March 30, however, Grande and Wendling submitted statements to Berkshire admitting that Aberdale had produced the photocopies at the tournament and had given them to Grande to attach to the flags at the first and ninth holes, as well as the trash barrel at the fifth tee. Aberdale admitted only that the pictures appeared in his golf bag and that he put the pictures in the golf cart. In the wake of these revelations, Berkshire threatened to fire Aberdale unless he resigned, which he did. Grande was suspended for six weeks, and Wendling was suspended for three weeks.

The MCAD issued a letter to Ms. Morehouse authorizing her to institute a civil action for damages. Plaintiffs thereupon filed their complaint in this court.

## IV.  DISCUSSION

Berkshire and the three individual defendants filed separate briefs, each asserting that, as a matter of law, the plaintiffs' claims are meritless. In addition, third-party defendant Travelers has moved for judgment on the pleadings under Fed.R.Civ.P. 12(c). The court will first address the defendants' Motions for Summary Judgment and then third-party defendant Travelers' Motion for Judgment on the Pleadings.

### A.  Count One:

#### 1.  Sexual Harassment under Mass. Gen. Laws ch.  151B § 4

In Count One, the plaintiffs charge that Berkshire and the individual defendants engaged in unlawful sexual harassment of She-

ryl Morehouse in violation of Mass. Gen. Laws ch. 151B, § 4.

Massachusetts General Laws ch. 151B, § 4(16A) makes it unlawful "for an employer, personally or through its agents, to sexually harass any employee." Sexual harassment includes "verbal or physical conduct of. a sexual nature," which has "the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." Mass. Gen. Laws ch. 151B, § 1(18).

■ A claim for sexual harassment lies where the offensive conduct is based on the employee's sex, is unwelcome and is sufficiently severe or pervasive to interfere with the employee's job performance or to create an abusive work environment. *Ruffino v. State St. Bank & Trust Co.*, 908 F.Supp. 1019, 1036 (D.Mass.1995) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)); *see also Mullenix v. Forsyth Dental Infirmary for Children*, 965 F.Supp. 120, 154 (D.Mass. 1996). In analyzing a claim of sexual harassment based on hostile environment, the court should consider whether a defendant's conduct "created a barrier, based solely on gender, to [the plaintiff's] full and untrammelled participation in the workplace." *College-Town, Div. of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 162, 508 N.E.2d 587 (1987).

### 2. Individual Defendants

As an initial matter, defendants Aberdale, Grande, and Wendling argue that individuals cannot be held liable under Mass. Gen. Laws ch. 151B. They further contend that plaintiffs have failed to establish a *prima facie* case of sexual harassment based on a hostile environment, because plaintiffs have not shown that the defendants' conduct was "sexual in nature" or "sufficiently severe or pervasive" to interfere with a reasonable person's work performance. Both arguments fail.

■ By its "distinctly crafted terms," chapter 151B unambiguously provides that individuals may indeed be held liable for aiding or abetting discriminatory conduct prohibited under the chapter. *Ruffino*, 908 F.Supp. at 1048. Specifically, Mass. Gen. Laws ch. 151B, § 4(5) provides that it is unlawful "for *any person*, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter or to attempt to do so." (emphasis supplied). In addition, section 4(4A) prohibits "any person" from interfering "with another person in the exercise or enjoyment of any right granted by this chapter." Therefore, chapter 151B

> applies not only to employers acting through their principals and agents, but also to any person who aids or abets discriminatory or retaliatory conduct prohibited under [Mass. Gen. Laws ch.] 151B, as well as to any person who interferes with another's right to work free of unlawful discrimination and retaliation.

*Ruffino*, 908 F.Supp. at 1048. As a result, Aberdale, Grande, and Wendling may be held liable under Mass. Gen. Laws ch. 151B as agents of Berkshire, as aiders and abetters, or simply as individuals whose conduct amounted to sexual harassment.

■ Defendant Wendling distinguishes his conduct from that of Aberdale and Grande, by claiming that he cannot be held liable under chapter 151B because his mere failure to intervene and stop the disgraceful antics of his peers falls short of proving that he personally committed any act of sexual harassment. A similar argument that an individual's "nonfeasance" precludes his liability under chapter 151B was recently rejected in *Chapin v. University of Massachusetts*, 977 F.Supp. 72 (D.Mass.1997). *Chapin* held that a female police officer stated an actionable claim against the police chief for aiding and abetting sexual harassment under Mass. Gen. Laws ch. 151B, § 4(5), where the officer alleged that the chief had knowledge of ongoing sexual harassment but failed to act, and where that *failure to act* caused injury to the officer. *Id.* at 80. The court noted that in situations where the nonfeasance results from "deliberate indifference" and not mere inattention or negligence, such nonfeasance "is not 'mere inaction,' but a designed and willful act of forbearance *in a*

*situation where action is required." Id.* at 79 (emphasis supplied).

In this case, defendant Wendling observed Aberdale and Grande produce and post the insulting photocopies of Ms. Morehouse. Thereafter, Wendling not only failed to remove the pictures or prevent additional copies from being posted, but he also openly laughed and joked about them with his co-defendants, and later lied about the whole matter. However reprehensible Wendling's "nonfeasance" might seem, his situation is distinguishable from the facts in *Chapin.*

Implicit in the court's analysis in *Chapin* is a recognition that the police chief in that case 1) was required to act under the circumstances, and 2) was in a position (as chief) to discipline the harassers (who were the chief's subordinates) and stop the misconduct. Here, concededly, Wendling's inaction could be considered "deliberate indifference." However, unlike the police chief in *Chapin,* Wendling was not acting in a situation where action was required of him, or even arguably could be expected of him. Wendling's position as a supervisor of Mr. Morehouse did not rise to any duty on his part to limit the disparagement of Ms. Morehouse. Moreover, Wendling was not in a position to stop the misconduct of Aberdale and Grande, who were not Wendling's subordinates, but higher-ranking employees of Berkshire. While protesting Aberdale's and Grande's actions certainly would have been the more laudable course of action, Wendling's failure to do so in these circumstances does not give rise to the kind of "nonfeasance" liability for aiding and abetting sexual harassment found in *Chapin.* As there is no material issue of fact regarding Wendling's conduct, the court finds that, as a matter of law, Wendling's conduct did not amount to aiding and abetting sexual harassment under Mass. Gen. Laws ch. 151B, § 4(5). Wendling's motion for summary judgment with respect to Count One, therefore, will be allowed.

Aberdale and Grande further argue that the plaintiffs have failed to establish a *prima facie* case of hostile environment sexual harassment under Mass. Gen. Laws ch. 151B, §§ 1(18), 4. In particular, they assert that their conduct was not "sexual in nature"

nor "sufficiently severe and pervasive" to interfere with a reasonable person's work performance. *See Messina v. Araserve,* 906 F.Supp. 34, 36 (D.Mass.1995).

■ To determine whether the effects of harassment are sufficiently severe and pervasive to create a hostile work environment under chapter 151B, the court must consider the totality of the circumstances, *id.* at 36, and approach the evidence "from the view of a reasonable person in the plaintiff's position." *Mullenix v. Forsyth Dental Infirmary for Children,* 965 F.Supp. 120, 154 (D.Mass.1996) (quoting *Gnerre v. Massachusetts Comm'n Against Discrimination,* 402 Mass. 502, 507, 524 N.E.2d 84 (1988)).

■ Conduct which is not specifically "sexual in nature" may nonetheless be evidence of sexual harassment; even vulgar joking may give rise to liability under chapter 151B. *See Melnychenko v. 84 Lumber Co.,* 424 Mass. 285, 286, 676 N.E.2d 45 (1997) (finding individual liable under ch. 151B for vulgar joking despite fact that conduct was not sexually motivated). Additionally, it appears that the Supreme Judicial Court imposes no quantitative requirements on the number of incidents necessary to constitute a claim of sexual harassment in the workplace. *See Gnerre,* 402 Mass. at 507, 524 N.E.2d 84. A single episode of harassment, if its effects are profound, may constitute actionable sex discrimination. A particularly instructive example of this is the case of *Bowman v. Heller,* Civ. A. No. 90–3269, 1993 WL 761159 (Mass.Super.Ct. July 9, 1993), *aff'd in part, vacated in part,* 420 Mass. 517, 651 N.E.2d 369, *cert. denied,* —— U.S. ——, 116 S.Ct. 682, 133 L.Ed.2d 530 (1995).

During a union election campaign, the defendant in *Bowman* superimposed the face of his female opponent onto pornographic photos of women and distributed the composite pictures to four or five co-workers. Despite the defendant's attempt to characterize the episode as an isolated incident, the court concluded that his conduct was "not only severe, but pervasive as well" because

[t]he photocopies at issue in this case unambiguously targeted [plaintiff].... It was a most unwelcome appropriation of her

person, and specifically her sexuality, for his hostile purposes.... [The photos] made her feel "fearful," "vulnerable," and "degraded." Knowing that so many of her co-workers had seen them and laughed at them made [plaintiff] reluctant to go to work. The entire episode altered the conditions of employment for [plaintiff], as it would have for the reasonable woman and indeed for the reasonable person.

*Id.*

This excerpt from *Bowman* could be applied almost verbatim to this case. The evidence shows that the photocopies posted at the tournament expressly targeted Ms. Morehouse. Everything allegedly written and drawn on the photocopies of Ms. Morehouse was explicitly sexual or based on the fact that she was a woman. Ms. Morehouse has stated that she felt degraded by the appropriation of her image and that she was particularly injured by the fact that so many of her fellow employees observed the obscenely defaced pictures of her. Her humiliation has negatively affected her work performance.

Despite defendants' protestations to the contrary, a fact finder could reasonably conclude that Aberdale's and Grande's conduct was indeed "sexual in nature" and sufficiently severe and pervasive to alter the conditions of Ms. Morehouse's employment and create a hostile work environment in violation of chapter 151B.

In sum, because Aberdale and Grande can be held individually liable under Mass. Gen. Laws ch. 151B, § 4, and because plaintiffs have established a *prima facie* case of hostile environment sexual harassment, summary judgment on Count One with respect to Aberdale and Grande will be denied.

### 3. Berkshire

■ Berkshire contends that it cannot be held liable for the conduct of the individual defendants because the individuals were not acting as "agents" of Berkshire. Alternatively, even if the individual defendants were "agents," they were not acting in any supervisory capacity at the time the alleged conduct occurred. In any event, Berkshire claims it took adequate remedial action following the incident.

Section 4(16A) of chapter 151B governs Berkshire's liability in this case. This provision makes it unlawful "for an employer, personally or *through its agents,* to sexually harass *any employee.*"

Berkshire's first argument, that the individual defendants were not acting as its "agents" for purposes of chapter 151B, rests on Berkshire's assertion that the golf tournament was not a company event. Ample evidence in the record, however, suggests that the annual tournament was actually a company tradition—one that involved routine participation by Berkshire's top management and merited coverage in Berkshire's newsletters. In earlier years, Berkshire had financially sponsored the tournament. In 1994, Wendling and Grande organized the "Berkshire Gas Company Fall Classic" using company time and resources. That Berkshire did not provide direct fiscal support for the 1994 tournament does not negate Berkshire's *de facto* endorsement of an annual function organized by its management, attended by its personnel, and named after it.[2] In sum, the "1994 Berkshire Gas Fall Classic" reasonably could be viewed as a company event. Consequently, Berkshire's argument that its employees Aberdale, Grande, and Wendling were not "agents" of Berkshire for purposes of chapter 151B when they organized and/or participated in the tournament fails.

■ Berkshire next cites to *Saad v. Stanley Street Treatment & Resources, Inc.,* Civ. A. No. 92-11434-DPW, 1994 WL 846911, at *8 (D.Mass. May 20, 1994), an unpublished decision, for the proposition that Mass. Gen. Laws ch. 151B, § 4 does not impose liability on employers for the acts of supervisory personnel who are "not acting in their supervisory role when dealing with another employee." In essence, Berkshire asserts that even if the individual defendants were its "agents" during the golf tournament, plain-

---

**2.** In addition, a subsidiary of the company, Berkshire Propane Co., did provide some prizes and mementos for the 1994 tournament.

tiffs must nonetheless demonstrate that the defendants harassed Ms. Morehouse *while acting in their capacity as Berkshire supervisors*. Plaintiffs cannot make such a showing, Berkshire argues, because 1) it is undisputed that none of the individual defendants was a direct supervisor of Ms. Morehouse, and 2) in any event, none of the individual defendants was exercising any supervisory authority during the golf tournament, as it was "strictly a social function."

In *Saad*, a female employee brought a hostile environment sexual harassment claim against her employer, charging that she had been harassed by a male co-worker of equal or lesser status. *Saad*, 1994 WL 846911, at *1. The plaintiff argued that the employer should be held strictly liable for the co-worker's conduct because even though he was not the plaintiff's supervisor, he apparently may have supervised some other employees. The court allowed the employer's motion for summary judgment, concluding that an employer cannot be held strictly liable for sexual harassment committed by one employee against a "non-subordinate co-worker." *Id.* at *8.

The court finds Berkshire's reliance on *Saad* unavailing. Unlike the situation in *Saad*, the individual defendants in this case were not co-workers of "equal or lesser status" than Ms. Morehouse. Ms. Morehouse was a rank-and-file employee, and clearly subordinate in the company hierarchy to the individual defendants, who were all management personnel and supervisory employees. For this reason, the court cannot agree that *Saad* dictates a ruling in favor of Berkshire in this case.

Furthermore, in its interpretation of ch. 151B, § 4, the SJC has concluded that the Massachusetts Legislature "intended that an employer be liable for discrimination committed by those on whom it confers authority." *College–Town, Division of Interco, Inc. v. Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 165, 508 N.E.2d 587 (1987). Under chapter 151B, therefore, an employer may be liable for sexual harassment by its supervisory personnel and managers, particularly when the harassment is directed at a rank and file employee. *Messi-*

*na v. Araserve, Inc.*, 906 F.Supp. 34, 37 (D.Mass.1995) (citing *College–Town*, 400 Mass. at 165, 508 N.E.2d 587).

Chapter 151B does not require that a supervisor must actually be in the course of exercising his or her authority over a direct subordinate in order to hold the employer liable for that supervisor's harassment of the subordinate employee. *See, e.g., Messina*, 906 F.Supp. at 37; *Johnson v. Plastic Packaging, Inc.*, 892 F.Supp. 25, 29–30 (D.Mass. 1995). The plain language of section 4(16A) forbids the employer, personally or through its agents, from sexually harassing *"any employee."* Nothing in this provision explicitly requires that a direct supervisory relationship exist between the harasser and the victim for liability under the chapter to attach to the employer.

Moreover, even if such a requirement existed, the background facts alleged by plaintiff make clear that the individual defendants' actions arose directly out of workplace tension within the company's employee hierarchy. Aberdale and Grande were supervisors bent on humiliating a co-worker who was lower in the pecking order.

■ Berkshire's final argument is that no basis for employer liability exists because Berkshire took adequate remedial action following the incident. Under Title VII, an employer's prompt and appropriate remediation can be a complete bar to liability for harassment committed by a supervisor or co-worker. *Messina*, 906 F.Supp. at 37. Massachusetts law, however, affords victims of harassment greater protection. Given that an employer is unconditionally liable under chapter 151B for sexual harassment by its supervisors, an employer's remediation does not bar liability under chapter 151B for harassment committed by a supervisor. *Messina*, 906 F.Supp. at 37; *College–Town*, 400 Mass. at 165, 508 N.E.2d 587. Therefore, the fact that Berkshire took remedial action following the golf tournament does not shield it entirely from liability.

■ In any event, whether Berkshire took appropriate and adequate remedial action following the incident is a disputed issue of fact. Berkshire closed its initial investiga-

tion after one month, suggesting that its inability to "assign" any "guilt" for the conduct at the golf course was partly due to the plaintiffs' refusal to cooperate with the investigation. Plaintiffs vigorously contest the contention that Berkshire requested such cooperation and counter that Berkshire failed even to interview Ms. Morehouse or request the pictures that had been retrieved by Mr. Morehouse, until after the plaintiffs filed charges with MCAD. Plaintiffs also stress that Berkshire's disciplinary actions against the defendants were taken not primarily in response to the defendants' conduct directed at Ms. Morehouse, but rather, as a consequence of their having lied to Berkshire officials during the initial investigation of the incident.

Because plaintiffs have submitted sufficient evidence to raise genuine issues of material fact with respect to Berkshire's liability for the conduct of the individual defendants, summary judgment on Count One with respect to Berkshire will be denied.

## B. Count Two: Negligent/Intentional Infliction of Emotional Distress

Count Two of the complaint alleges that the individual defendants, through their conduct, negligently or intentionally inflicted emotional distress on the Morehouses. Aberdale, Grande, and Wendling all argue that 1) the exclusivity provision of the Workers Compensation Act, Mass. Gen. Laws ch. 152, § 24, bars the Morehouses' claims for emotional distress, and 2) in any event, the plaintiffs have failed to establish a *prima facie* case of either intentional or negligent infliction of emotional distress.

The exclusivity provision of the Workers Compensation Act ("the Act") provides that the Act shall be an employee's exclusive remedy for personal injuries arising out of employment unless the employee preserves such right of action by giving written notice to the employer at the time of hire. Mass. Gen. Laws ch. 152, § 24; *see also Chatman v. Gentle Dental Center of Waltham,* 973 F.Supp. 228, 240 (D.Mass.1997). Thus, common law personal injury actions against the insured employer or against co-employees acting within the scope of employment are generally barred by the Act. *See Chatman,* 973 F.Supp. at 240.

However, the SJC has held that the exclusive remedy provision of the Act does not bar claims against co-employees or supervisors who commit *"intentional torts not related to the interests of the employer."* *O'Connell v. Chasdi,* 400 Mass. 686, 690, 511 N.E.2d 349 (1987) (emphasis supplied). Because sexual harassment is "not remotely related to the employer's interests," *id.* at 690 n. 5, 511 N.E.2d 349, an employee who is subjected to intentional infliction of emotional distress stemming from sexual harassment by a co-employee is not barred by the Act from suing that individual. *See id.* at 690–91, 511 N.E.2d 349; *see also Ruffino v. State St. Bank & Trust Co.,* 908 F.Supp. 1019, 1049–50 (D.Mass.1995); *Bergeson v. Franchi,* 783 F.Supp. 713, 716–17 (D.Mass.1992). Claims for *negligent* infliction of emotional distress, on the other hand, do not fit the exception for intentional torts recognized by the SJC in *Chasdi,* and are therefore barred by the Act. *Cf. Ruffino,* 908 F.Supp. at 1048 (D.Mass. 1995) (finding claims against co-workers and employer for negligent infliction of emotional distress arising from sexual harassment "plainly barred" by exclusivity provision of Workers' Compensation Act); *Green v. Wyman–Gordon Co.,* 422 Mass. 551, 560, 664 N.E.2d 808 (1996). As a result, the plaintiffs' claim for negligent infliction of emotional distress is barred by the Workers' Compensation Act, and summary judgment with respect to the negligent infliction of emotional distress claim of Count Two will be granted as to all three individual defendants. However, in light of *Chasdi,* the plaintiffs' claim for intentional infliction of emotional distress is not barred by the Act, and therefore remains.

The SJC set forth the elements of a claim for intentional infliction of emotional distress in *Agis v. Howard Johnson Co.,* 371 Mass. 140, 355 N.E.2d 315 (1976). The plaintiff must show that: 1) the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress would result from his action; 2) the conduct was extreme and outrageous, beyond all bounds of decency and utterly intolerable

in a civilized community; 3) the defendant's conduct caused the plaintiff's distress; and 4) the plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it. *Id.* at 144–45, 355 N.E.2d 315; *see also Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir.1996); *Ruffino*, 908 F.Supp. at 1049; *Sena v. Commonwealth*, 417 Mass. 250, 263–64, 629 N.E.2d 986 (1994).

Each of the individual defendants maintains that Ms. Morehouse has failed to establish a *prima facie* case of intentional infliction of emotional distress because she cannot show that the conduct alleged was sufficiently "extreme and outrageous" to satisfy the *Agis* standard.

■ Defendant Wendling submits that his failure to prevent the distribution of the photocopies of Ms. Morehouse at the golf tournament does not, as a matter of law, constitute "extreme and outrageous" conduct. The court agrees. The court finds no evidence in the record that Wendling brought photocopies of Ms. Morehouse to the golf course, personally distributed or posted any photocopies, wrote or drew on any photocopies, or even suggested or encouraged such action. Wendling's failure to stop his co-defendants from humiliating Ms. Morehouse was perhaps dishonorable, but his inaction cannot, on these facts, be considered "extreme and outrageous" conduct. The court will allow Wendling's Motion for Summary Judgment with respect to the intentional infliction of emotional distress claim of Count Two.

■ With respect to defendants Aberdale and Grande, on the other hand, Ms. Morehouse has offered sufficient evidence to lead a trier of fact to conclude that Aberdale's and Grande's conduct was indeed sufficiently "extreme and outrageous," rendering summary judgment inappropriate on this claim. *See Agis*, 371 Mass. at 145, 355 N.E.2d 315. These two defendants intentionally posted (and Aberdale and others allegedly defaced) multiple copies of Ms. Morehouse's photograph at an event attended by a large number of her male co-workers and supervisors. Aberdale's attempt at "having a little fun" actively set into motion an afternoon of mockery and derision at Ms. Morehouse's direct expense; moreover, his and Grande's deliberate ridicule of a subordinate employee was accomplished in a grossly demeaning and sexual manner. Common sense says that Aberdale and Grande reasonably should have known that their reckless behavior would result in Ms. Morehouse's severe emotional distress, as apparently it did.

Thus, viewing the facts in the light most favorable to the plaintiff, Ms. Morehouse has established the first, third, and fourth elements of the *Agis* standard for intentional infliction of emotional distress. In addition, the record reveals a genuine issue of material fact with respect to the "extreme and outrageous" nature of Aberdale's and Grande's conduct. Therefore, it is for the jury to decide whether Aberdale and Grande should be liable to Ms. Morehouse for intentional infliction of emotional distress. Summary judgment on the remaining intentional infliction of emotional distress claim of Count Two will be denied with respect to these two defendants.

■ At the same time, the fact that Ms. Morehouse was the direct target of the misconduct of Aberdale and Grande does not, by itself, afford her husband a cause of action against these two defendants for intentional infliction of emotional distress. Plaintiffs' complaint does not aver that Mr. Morehouse suffered loss of consortium or similar injury stemming from the golf tournament incident, and the facts, even viewed in the light most favorable to the plaintiffs, simply are not sufficient to support a claim by Mr. Morehouse for intentional infliction of emotional distress under the *Agis* standard. As a result, defendants' motions for summary judgment will be allowed with respect to Mr. Morehouse's claims in Count Two.

*C. Count Three: Berkshire's Negligent Failure to Prevent, Limit, or Mitigate the Actions of the Individual Defendants*

In Count Three, the Morehouses allege that Berkshire "negligently failed to prevent, limit, or mitigate the actions of the individual defendants," causing injury to the plaintiffs.

To the extent that Count Three attempts to restate Berkshire's liability for the sexual harassment allegedly committed by its supervisory employees, any such liability is addressed by plaintiff's chapter 151B claim under Count One. *See Green v. Wyman–Gordon Co.*, 422 Mass. 551, 552, 558, 664 N.E.2d 808 (1996) (finding sexual harassment plaintiff's additional claims for "negligent failure to investigate, ... train[] and supervis[e]" barred by exclusivity provision of chapter 151B). Likewise, to the extent that Count Three professes to attach common law tort liability to Berkshire, such actions against an employer are barred by the exclusivity provision of the Workers' Compensation Act. *See Doe v. Purity Supreme, Inc.*, 422 Mass. 563, 565–66, 664 N.E.2d 815 (1996); *Wyman–Gordon*, 422 Mass. at 558, 664 N.E.2d 808; *O'Connell v. Chasdi*, 400 Mass. 686, 690–91, 511 N.E.2d 349 (1987). Because plaintiffs state no viable claim under Count Three, the court will allow Berkshire's Motion for Summary Judgment on this count.

### D. Third-Party Defendant Travelers Insurance Company's Motion for Judgment on the Pleadings FRCP 12(c)

In his third-party complaint, defendant Wendling alleges that Berkshire was protected by Workers' Compensation and Employers Liability policies issued by third-party defendant Travelers. Wendling asserts that these policies, in effect at the time of the golf tournament, require Travelers to defend Wendling against the Morehouses' claims and to indemnify him with respect to any judgment entered on such claims.

Travelers has moved, without opposition, for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Having reviewed Travelers' arguments and found them to be meritorious, and noting plaintiff's lack of opposition, the court will allow this motion.

### V. CONCLUSION

For the reasons set forth above, summary judgment will be DENIED with respect to:

1) Count One as to defendants Aberdale, Grande, and Berkshire; and 2) Count Two regarding the intentional infliction of emotional distress claim against defendants Aberdale and Grande brought by Sheryl Morehouse. The court will ALLOW summary judgment with respect to: 1) Count One as to defendant Wendling; 2) the intentional infliction of emotional distress claim of Count Two as to defendant Wendling; 3) the negligent infliction of emotional distress claim of Count Two as to all individual defendants; 4) Count Three as to Berkshire; and 5) all claims of co-plaintiff William Morehouse.[3] Finally, third-party defendant Travelers' motion for judgment on the pleadings will be ALLOWED.

A separate order will issue.

---

**3.** As summary judgment for the defendants will be allowed with respect to William Morehouse's claims in Counts Two and Three, Sheryl Morehouse will be the only remaining plaintiff in the case, with claims against Aberdale, Grande and Berkshire in Count One, and against Aberdale and Grande in Count Two.