LISA TRINH vs. GENTLE COMMUNICATIONS, LLC, & another.[1]

No. 07-P-441.

Middlesex. December 11, 2007. - March 10, 2008.

Present: COWIN, BROWN, & KAFKER, JJ.

*Practice, Civil,* Judgment notwithstanding verdict. *Employment,* Sexual harass-
ment, Discrimination, Constructive discharge. *Anti-Discrimination Law,*
Sex, Employment, Damages. *Damages,* Under anti-discrimination law,
Punitive.

In an action brought by a plaintiff against her former employer and her former
supervisor, alleging sexual harassment in employment, the trial court judge
did not err in denying the defendants' motion for judgment notwithstand-
ing the verdict on the issue of the award of compensatory damages against
both defendants arising from the supervisor's conduct, where the evidence
at trial demonstrated that the supervisor's remarks and actions were suf-
ficiently severe and pervasive to support the jury's findings of harassment
and of vicarious liability on the part of the employer [373-374]; further,
the award of punitive damages against the supervisor was both warranted
and not excessive [375-376].

In a civil action brought by a plaintiff alleging sexual harassment in employ-
ment, the trial court judge did not err in granting the defendants' motion
for judgment notwithstanding the verdict on the issue of the award of dam-
ages for lost income, where the plaintiff failed to present sufficient evidence
to establish a constructive discharge. [374-375]

In an action brought by a plaintiff against her former employer, alleging that
the employer was liable for failing to take adequate remedial action after
the plaintiff complained of sexual harassment by her supervisor, the trial
court judge properly granted the employer's motion for judgment
notwithstanding the verdict, and correctly ruled that the jury lacked a
factual predicate for assessing punitive damages against the employer
directly, where the evidence presented at trial was insufficient to warrant a
finding that the employer inadequately or inappropriately investigated the
plaintiff's claims of sexual harassment. [376-378]

CIVIL ACTION commenced in the Superior Court Department on
October 30, 2000.

The case was tried before *Mitchell J. Sikora, Jr.,* J., and
motions for judgment notwithstanding the verdict were heard
by him.

[1]Samuel Tencer.

*Joseph H. Reinhardt* (*James F. Champa* with him) for the plaintiff.

*Heidi Goldstein Shepherd* for the defendants.

KAFKER, J. Lisa Trinh, a junior employee of Gentle Communications, LLC, doing business as Gentle Dental (Gentle), complained that the dentist in charge of its Brookline office, Samuel Tencer, sexually harassed her. The matter went to a jury, which found, on special questions, that (1) Tencer sexually harassed Trinh; (2) such harassment proximately caused damages of $20,000 for emotional injury and $20,000 in lost income or back pay; (3) Tencer was individually liable for a punitive award of $65,000; (4) Gentle was separately liable for Tencer's sexual harassment because it knew of Tencer's harassment and failed to take adequate remedial measures; (5) Trinh's damages proximately related to Gentle's separate tort were $20,000 in lost income and $20,000 in emotional injury; (6) Gentle was separately liable for a $1 million punitive award.[2] The jury also determined that (1) neither Tencer nor Gentle retaliated against Trinh for presenting her complaint; (2) Tencer did not intentionally inflict emotional distress on Trinh; and (3) Tencer did not interfere with an advantageous business or employee relationship between Trinh and Gentle.

Tencer and Gentle filed motions pursuant to Mass.R.Civ.P. 50(b), as amended, 428 Mass. 402 (1998), for judgment notwithstanding the verdict (judgment n.o.v.) or, in the alternative, for a new trial or a remittitur. The trial judge allowed the motions for judgment n.o.v. in part, concluding that (1) there was no evidence that Trinh suffered lost income proximately caused by either Tencer or Gentle; (2) no evidence supported a finding of separate liability against Gentle; and (3) no evidence supported a punitive award against Gentle, which award was in any case grossly excessive.[3] The judge denied the motion for judgment n.o.v. on the sexual harassment award and on the separate

---

[2]The complaint also set forth a cause of action against Tencer for tortious interference with advantageous contractual relations and against Gentle for breach of contract. The judge allowed Gentle's motion for a directed verdict on the breach of contract claim.

[3]The judge also ruled that if the judgment n.o.v. were ultimately reversed, Tencer and Gentle would be entitled to a new trial on the same issues. As we affirm the judgment, we need not address the request for alternate relief in the

punitive damage award against Tencer. In accord with those rulings, the judge entered a judgment that awarded Trinh (1) $20,000 in compensatory damages jointly and severally against both Tencer and Gentle; (2) $65,000 in punitive damages against Tencer only; and (3) $30,592 as Trinh's reasonable attorney's fees against both Tencer and Gentle. The defendants appeal, and Trinh cross-appeals. We affirm.

*Factual background.* We summarize the facts the jury could have found as follows. Gentle owns a number of dentists' offices in the greater Boston area. In October of 1997, Trinh was hired by Gentle and was assigned to work in its Brookline office as a "care coordinator," as part of what Gentle designated as a "pilot program." The care coordinator's role was to explain treatments recommended by the dentists to the patients, to determine how patients would pay, and to schedule the treatments. When Trinh began her employment, Gentle presented Trinh with a copy of Gentle's written sexual harassment policy and had her sign it. The policy indicated that complaints about sexual harassment should be directed to Barry Bornfriend, Gentle's chief operating officer, or Donna Simonds, its director of human resources. Trinh testified that she was not given time to adequately review the policy prior to signing it, nor was she given a copy.

After her training, Trinh began work in the Brookline office at the beginning of December. Tencer had previously expressed skepticism with the idea of care coordinators, but agreed to participate in the pilot program.

During the few months in which Trinh worked at the Brookline office, Tencer engaged in behavior that made her feel uncomfortable. Trinh testified that Tencer, on several occasions, made inappropriate sexual remarks to her. Tencer had, at one point, walked in on a conversation at the front desk where Trinh revealed to other coworkers that she was considering breast augmentation surgery. Tencer later brought up the surgery with her individually and asked her if he could see what her breasts looked like before the surgery. He commented on her clothes and body at work, and at one point walked into the lunchroom, looked at the plaintiff, and said, "I like to eat that too," refer-

form of a new trial or a remittitur.

ring to Trinh. He also whistled at Trinh in the workplace, looked at her in a way that made her feel uncomfortable, and when he passed her in the hallways during work, he would brush against her. Finally, at one point Tencer leaned over Trinh while she worked at the front counter, and she testified that she could feel his penis against her back.

Over the course of her employment in the Brookline office, Trinh mentioned her discomfort to three people: a care coordinator in Gentle's Natick office, who had gone through training with the plaintiff; the Gentle employee who trained and supervised the care coordinator program; and a dentist at another Gentle location (a part owner who did not act as an officer of the company) whom she dated over the span of approximately two months while she worked in the Brookline office.

Near the end of February, 1998, Trinh was notified that she was to be transferred to Gentle's Cambridge office. On her second-to-last day in the Brookline office, Thursday, February 26, Trinh notified Kathy Circeo, the Brookline office administrator, of her complaints. The next day, Circeo called Simonds about the complaint. Simonds then conferred with Bornfriend and decided to investigate the allegations, although Trinh had not contacted either of them directly to relate the substance of her complaints.

The following Monday, March 2, Simonds contacted Trinh, who was at her first day of work in the Cambridge office, and made an appointment to speak to her on Wednesday, March 4. On March 3, Simonds and Bornfriend went to the Brookline office and interviewed five employees there, including Tencer and Circeo. When interviewed, Tencer denied the harassing behavior and said that Trinh had dressed inappropriately for the office, although she had never been told during her employment at Gentle that her dress was inappropriate.

When conducting the interviews, Simonds took handwritten notes and typed them afterwards. There were differences between the handwritten notes and the typed copies made afterwards; the typed versions lacked some details and contained other additional details not included in the handwritten notes. Each set of typed interview notes contained a signature line for the interviewee to attest that the notes were a truthful representation of the interview, but most of them were unsigned.

On March 3, Trinh sent a letter to Bornfriend, saying that she was too "stressed out" to meet with Bornfriend and Simonds the next day. Bornfriend and Simonds then made an appointment to speak with Trinh at some point in the next week. In the meantime, Bornfriend and Simonds interviewed several employees at different Gentle offices, including, on March 5, the care coordinator in Natick to whom Trinh had detailed her complaints.

Trinh testified that her conversation with her colleague in Natick convinced her that the investigation was biased against her. From that conversation, she got the impression that the investigation was focusing on her behavior at the office, rather than Tencer's, and therefore that the investigation was aimed at trying to discredit her rather than to resolve her complaints fairly. On March 9, she wrote another letter to Bornfriend, stating that it was "impossible" for her to continue working at Gentle because "everyone in the company knows about your investigation and you have accused me of lying about the sexual harassment and of being immoral and illegal. The entire environment has become hostile towards me." She then went on to state that she was terminating her employment with Gentle as of March 14, 1998.

Simonds and Bornfriend went to the Cambridge office to speak with Trinh in person, but she ended the interview after a short period of time because, as she testified, she had to see a patient. At the end of the week, Trinh left her job at Gentle. Thus, Simonds and Bornfriend's investigation concluded with none of their interview subjects having corroborated Trinh's complaints and with Trinh herself having refused to participate in the internal investigation because of her belief that the investigation was biased against her. As they had found no information confirming Trinh's complaints against Tencer during their interviews, and Trinh had declined the opportunities given to her to participate in the investigation, Simonds and Bornfriend concluded their investigation, and Tencer was not disciplined.

*Discussion.* 1. *Standard of review.* In reviewing a trial judge's decision on a motion for judgment n.o.v., "[w]e do not defer to the judge's view of the evidence but examine the case anew, following the same standard the judge is obliged to apply." *MacCormack* v. *Boston Edison Co.*, 423 Mass. 652, 659 (1996).

That standard has been often articulated and provides that "the question before us is the same: that is, 'whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." ' *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 343 (1972), quoting from *Kelly* v. *Railway Exp. Agency, Inc.*, 315 Mass. 301, 302 (1943)." *Doe* v. *Senechal*, 66 Mass. App. Ct. 68, 76 (2006). *Salvi* v. *Suffolk County Sheriff's Dept.*, 67 Mass. App. Ct. 596, 603 (2006). See *Smith* v. *Bell Atl.*, 63 Mass. App. Ct. 702, 711 (2005). We consider the claims against each of the defendants in turn.

2. *Claims against Tencer.* a. *Compensatory damages.* On appeal Tencer argues that the trial judge should have granted his motion for judgment n.o.v. or a new trial on the award for compensatory damages because Trinh failed to introduce sufficient evidence to sustain a sexual harassment claim against Tencer individually and, in addition, failed to meet the heightened burden for assessing punitive damages.[4]

Trinh's case was based on the theory that Tencer's harassment created a hostile work environment. The relevant portion of the statute defines sexual harassment as "verbal or physical conduct of a sexual nature when . . . such . . . conduct ha[s] the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." G. L. c. 151B, § 1(18), as amended by St. 1987, c. 473, § 2. In order to prevail on this theory, Trinh had to show that the "conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance." *Muzzy* v. *Cahillane Motors, Inc.*, 434 Mass. 409, 411 (2001). Conduct of a sexual nature may be considered sexual harassment under the statute, even absent sexual advances or requests for sexual favors. See *Melnychenko* v. *84 Lumber Co.*, 424 Mass. 285, 290 (1997).

There was sufficient evidence at trial to support the jury's verdict that Tencer sexually harassed Trinh. She testified that

---

[4]General Laws c. 151B allows employees to be held individually liable for sexual harassment. See, e.g., *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 490-491 (2000).

Tencer asked to see her breasts after the conversation concerning her breast augmentation surgery. Trinh testified that Tencer made other sexually suggestive comments, and that he rubbed against her in a way in which she could feel his penis against her. Tencer's statements and actions were objectively offensive, and Trinh testified to her discomfort about the comments and physical contact. Tencer's remarks and actions were sufficiently severe and pervasive to support the finding of harassment and the emotional distress damages that ensued therefrom.[5] We find nothing in the record that compels us to disturb the trial judge's decision to allow the jury's verdict to stand in this regard. It was also appropriate to hold the employer vicariously liable for its manager's sexual harassment and for the compensatory damages owed because of this harassment. See *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. 156, 166-167 (1987).

b. *Damages for lost income.*[6] The plaintiff complains that the judge should not have granted the defendants' motion for judgment n.o.v. on the award of damages to her for lost income. The judge did not err in his ruling. Trinh was not fired from Gentle, but rather resigned. In these circumstances, she was required to show that she was constructively discharged from Gentle in order to recover lost income. A plaintiff establishes a constructive discharge by showing that "based on an *objective* assessment of the conditions under which the employee has asserted [s]he was expected to work, it could be found they were so difficult as to be intolerable." *GTE Prod. Corp.* v. *Stewart*, 421 Mass. 22, 34 (1995). See *Salvi* v. *Suffolk County Sheriff's Dept.*, 67 Mass. App. Ct. at 606-607. In this case, Trinh was transferred out of the Brookline office, where the complained-of harassment took place, and away from the one manager who had harassed her. She had worked in the Cambridge office for less than two weeks when she submitted her letter of resignation. Her pay had not been reduced, and her responsibilities at Cambridge were sub-

---

[5] Trinh testified to loss of sleep and weight due to the harassment. She also described being depressed and seeking counselling.

[6] We consider the claims for lost income against both defendants together.

stantially the same as they had been in Brookline.[7] There was no evidence that her managers in Cambridge took any adverse action toward her.

Trinh's testimony and her resignation letter do not establish a work environment in Cambridge so hostile that it would support a finding of constructive discharge. While participation in the company's investigation of her sexual harassment complaint could be expected to be difficult, it would not constitute intolerable working conditions. Moreover, Trinh did not participate in the process after making the complaint.[8] The trial judge properly ruled that Trinh had not presented sufficient evidence to establish a constructive discharge, and therefore she was not entitled to damages for lost income.

c. *Punitive damages.* To assess punitive damages under G. L. c. 151B, § 9, the plaintiff must show that the complained-of behavior is "not merely intentional and offensive." *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 498 (2000). Rather, the conduct must be "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 17a (1998), quoting from Restatement (Second) of Torts § 908(2) (1979). The conduct must warrant "condemnation and deterrence." *Bain* v. *Springfield*, 424 Mass. 758, 767 (1997). We conclude that Tencer's conduct could have been found outrageous given his sexual harassment of a junior employee, including asking to see her breasts and rubbing up against her so that she could feel his penis, and his position of responsibility as the dentist in charge of the local office.

The punitive damages assessed against Tencer also were not excessive. We use a three-part test to analyze the reasonableness of a punitive damages award, scrutinizing " 'the degree of reprehensibility of the defendant's conduct,' the ratio of the punitive damage award to the 'actual harm inflicted on the plaintiff,' [and] a comparison of the 'punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct.' " *Labonte* v. *Hutchins & Wheeler*, 424

---

[7] We conclude, as did the trial judge, that any loss of commissions on her part resulted from her failure to pursue the commissions.

[8] A comment made by Trinh's coworker in Cambridge, albeit offensive, also did not render her working conditions intolerable.

Mass. 813, 826-827 (1997), quoting from *BMW of N. Am.* v. *Gore*, 517 U.S. 559, 575, 580, 583 (1996). Tencer's conduct described above could have been found reprehensible. The ratio of less than four-to-one was within standards deemed appropriate. See *State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 425 (2003) ("Single digit multipliers are more likely to comport with due process"); *Ciccarelli* v. *School Dept. of Lowell*, 70 Mass. App. Ct. 787, 798 (2007) (five-to-one ratio affirmed). And the amount, under $100,000, has been found acceptable in similar contexts. See, e.g., *Bain* v. *Springfield*, 424 Mass. at 768; *Beaupre* v. *Cliff Smith & Assocs.*, *supra* at 497-498.[9]

3. *Claims against Gentle.* a. *Compensatory damages.* An employer may be found directly liable for discrimination under G. L. c. 151B, § 4, if it is notified of sexual harassment in its workplace and fails to take adequate remedial action. *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. at 167. On appeal, Trinh argues that the jury verdict assessing direct liability, both compensatory and punitive, against Gentle was adequately supported, and therefore the judge's grant of Gentle's motion for judgment n.o.v. and, in the alternative, a new trial should be reversed.

The trial judge, in his ruling on Gentle's motion for judgment n.o.v., accurately delineated the factual basis for his decision to vacate the jury's finding of direct liability against Gentle. Even

---

[9]Although the employer was held jointly and severally liable for the compensatory damages award against Tencer under vicarious liability principles established by *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. at 167, there was no attempt to hold the company vicariously liable for the punitive damages award against Tencer. "The common law has long recognized that agency principles limit vicarious liability on punitive awards." *Kolstad* v. *American Dental Assn.*, 527 U.S. 526, 541 (1999). In the analogous Title VII context, the United States Supreme Court held: "Recognizing Title VII as an effort to promote prevention as well as remediation, and observing the very principles underlying the Restatement [of Agency's] strict limits on vicarious liability for punitive damages, we agree that, in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Id.* at 545 (quotation omitted). In the instant case, the plaintiff sought to hold the defendant employer directly, and not vicariously, liable for punitive damages for its response to Tencer's harassment. See discussion of punitive damages pertaining to Gentle, *infra*.

drawing all reasonable inferences in Trinh's favor, the evidence presented at trial was insufficient to warrant a finding that Gentle inadequately or inappropriately investigated the claims.

Trinh did not complain to the officials identified in the sexual harassment policy.[10] Once Donna Simonds, the director of human resources and one of the officials responsible for investigating sexual harassment, became aware of the complaints, she followed up immediately along with Barry Bornfriend, the chief operating officer of the company, and the other official responsible for sexual harassment investigations.

Simonds and Bornfriend also responded appropriately, including questioning Trinh's behavior. At least some inquiry into the plaintiff's workplace behavior was relevant to the investigation, as determining whether the conduct at issue was unwelcome is a key component of a claim under the sexual harassment statute. See *Ramsdell* v. *Western Mass. Bus Lines, Inc.*, 415 Mass. 673, 676-678 (1993). Tencer denied the allegations, and others had told the investigators that Trinh was a willing participant in the office's sexual banter. The notes from the interviews indicate that Bornfriend and Simonds asked their interview subjects relevant questions about the behavior of all involved regarding the plaintiff's allegations. Trinh was kept informed of the investigation and given several opportunities to participate, which she declined. Tencer was not involved in the investigation, except for being questioned, and other staff members were questioned individually, thereby allowing them to speak more freely. Contrast *College-Town, Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination*, 400 Mass. at 167-168 ("[The plaintiff] was never informed about the staff meeting, while [the alleged harasser] was present throughout. The staff were never questioned individually. [The plaintiff] was never provided an opportunity to confront [the alleged harasser], nor was she interviewed after [the alleged harasser] and the staff had been approached"). While Tencer was not disciplined,

---

[10]We note that the trainer of the care coordinators and the dentist Trinh dated did not report what they heard from Trinh to those responsible for investigating harassment. Their inaction, albeit shortly delaying the commencement of the investigation, does not materially change our analysis. They were not presented with formal complaints. The dentist was also given the information as Trinh's boyfriend and not in any official capacity.

without Trinh's testimony the appropriate employer response is a difficult personnel matter on a contested complaint. Unlike the jury, the personnel director never heard Trinh's testimony.

Trinh's arguments based on disparities between handwritten notes and typed versions of interviews do not establish that the investigation was a whitewash, particularly where her contentions were not corroborated by other witnesses, and she failed to participate in the process and left the employer's employment, thereby short-circuiting the investigation.

Trinh's reliance on the filing of an unrelated sexual harassment complaint against Bornfriend in 1994 does not provide evidence that the investigation was biased, nor was there any evidence that Trinh was aware of the complaint, which might have given her reason not to participate in the investigation.

As we conclude that Trinh did not present sufficient evidence to establish direct liability against Gentle for sexual harassment for purposes of compensatory liability, we also conclude that the trial judge was correct in ruling that the jury lacked a factual predicate for assessing punitive damages against Gentle directly.[11]

*Judgment affirmed.*

---

[11]For this reason, we need not discuss the trial judge's determination that the punitive damages award against Gentle was unconstitutionally excessive.